[No. 1350. Decided June 20, 1894.]

### THE STATE OF WASHINGTON, *Respondent*, v. JAMES MURPHY, *Appellant*.

CONTINUANCE — CRIMINAL LAW — COMPETENCY OF JUROR — INTRODUCTION OF EVIDENCE.

The granting of a continuance being largely discretionary with the trial court, a judgment will not be reversed because of the refusal of a continuance for the purpose of procuring evidence of certain facts, when it is not made to appear that the same evidence could not be procured from other witnesses.

Where, upon the examination of a juror upon a criminal prosecution, it appears that the juror has formed an opinion as to the guilt of the accused from newspaper accounts of the crime, and that it would take strong evidence to change his opinion, but that he could lay aside his impressions and try the case wholly upon the evidence, he is subject to challenge.

Where there is an attempt to sustain the testimony of a witness by showing that he had made statements out of court similar to the allegations of an affidavit he had filed in the case, the proper method is for the sustaining witness to testify what the statements were, and the correspondence between the statements and affidavit should not be shown by the witness, but left to the jury to make the comparison.

*Appeal from Superior Court, King County.*

*Ronald & Piles*, for appellant.

*John F. Miller*, Prosecuting Attorney, *A. G. McBride*
and *James A. Haight*, for The State.

The opinion of the court was delivered by

DUNBAR, C. J. — The defendant was prosecuted for mur-
der in the first degree. A verdict of guilty of murder in
the second degree was rendered, motion for a new trial was
made and overruled, and defendant sentenced to a term
of fifteen years in the penitentiary.

The first assignment of error is that the court erred in
denying defendant's motion for a continuance. The affidavit
for continuance shows that one Daniel McMillan was a
material and necessary witness on behalf of the defense, in
that the defendant could prove by said Daniel McMillan
certain threats that had been made by the deceased against
the defendant, and a continuance was asked for six days
to procure the attendance of the said McMillan. Inasmuch
as it does not appear from the affidavit that this evidence
could not have been obtained from other witnesses, and
inasmuch as under the statute a large discretion is vested
in the trial court in relation to the continuance of a cause,
we are not prepared to say that there was such an abuse
of discretion by the court in refusing to grant a continu-
ance on the showing made that this court would reverse
the judgment on that ground.

The second assignment, however, viz., that the court
erred in denying defendant's challenge for cause to juror
Kile, is in our minds a more serious one, as it seems to us
that a substantial right was denied to the defendant,
namely, the right to be tried by an impartial jury. In
order that there may be no misconception of what the rul-
ing of the court is on this question we think it important

to set out fully the examination of the juror Kyle.  After
stating that he had read an account of the murder in the
papers and answering some preliminary questions, the fol-
lowing questions and answers appear:

"*Question:* Then such opinions as would be formed by
reading the papers there were formed and expressed.  *An-
swer:*  Yes, sir.

"*Q.* And those papers all seemed to give it one way,
didn't they?  *A.* Yes, sir; as near as I could tell the pa-
pers were very much one way.

"*Q.* And the papers expressed opinions, did they not?
*A.* Yes, sir.

"*Q.* And the opinions which you and your neighbors
expressed were in accordance with the opinions expressed
in the newspapers?  *A.* Yes, sir.

"*Q.* And you have not had any occasion since that to
change your opinion?  *A.* No, because I have not heard
anything more about it.

"*Q.* And you still, of course, entertain now the opinion
which you formed at that time?  *A.* I do.

"*Q.* That opinion is such an opinion as would require
evidence to remove, would it?  *A.* It would.

"*Q.* You could not disregard that opinion in this case
unless there should be evidence introduced to overcome
that opinion, could you?  *A.* I could not.

"*Q.* That opinion will stay with you in this case, will
it, unless evidence is introduced to the contrary to remove
it?  *A.* Yes, sir.

"*Q.* If there should be no evidence introduced to the
contrary, then that opinion which you have formed, and
which you now entertain, will simply add weight to what-
ever opinion you form on this testimony?  *A.* I think it
would.

"*Q.* Will you consider that opinion as a circumstance,
or as giving weight to the testimony here which is given
in accordance with that opinion?  *A.* Yes, I think I would.

"*Q.* Will you disregard that opinion until it is over-
come and wiped out of your mind by evidence to the con-
trary?  *A.* I don't see as I could.

"*Q.* Would you require evidence to the contrary before
you would disregard that opinion?  *A.* I would.

" *Q.* Your mind at this time then is not perfectly free from any opinion as to the merits of this case? *A.* It is not, any more than what I have read. I have an opinion, of course.

" *Q.* So that that opinion is still in your mind at the entrance upon this trial? *A.* It is.

"MR. RONALD : I think, if your honor please, we will interpose a challenge for cause to this juror.

"THE COURT : Is the challenge denied?

"MR. MILLER (Prosecuting Attorney): We deny the challenge.

"THE COURT: You say you have some opinion of the defendant's guilt or innocence on this charge? *A.* I have, from what I read in the paper.

" *Q.* Is that opinion founded wholly upon what you read in the paper? *A.* That is what it is founded on, yes, sir.

" *Q.* Founded wholly upon what you read in the paper? No one has undertaken to tell you what the facts were in this case? *A.* No, because them that I talked with didn't know any more than I did about what they read in the paper.

" *Q.* You all formed your impression from what you read in the newspaper? *A.* Yes, sir.

" *Q.* Do you think that you can hear and determine the facts in this case from the evidence given by the witnesses here upon the witness stand with the same impartiality and with the same fairness that you could if you had heard nothing about this thing? *A.* I think I could.

" *Q.* Well, will you hear and determine this cause with that same degree of impartiality and fairness that you would if you had heard nothing about it? *A.* Well, I think it would take a little more evidence than it would if I had never heard anything about it.

" *Q.* You think what you read in the newspapers would be liable to influence you here as a juror in this case? *A.* It would unless I had something that was strong on the other side.

" *Q.* You would allow what you read in the newspapers to influence your judgment? *A.* To a certain extent I should unless I knew something to the contrary.

"*Q.* Do you feel as though you were perfectly free and unbiased in this case? *A.* I do, so far as that is concerned.

"*Q.* You don't think then that you would be able to hear the case with the same impartiality that you would if you had heard nothing about it? *A.* I suppose there would be to a certain extent a little in my mind.

"*Q.* Do you think you would be able to lay aside what impressions you have formed from reading the newspapers and try the case here upon the evidence? *A.* I would if I could get stronger evidence.

"*Q.* Do you think you would be able to wholly lay aside the impressions you have received from reading this account in the newspaper and try the case wholly upon the evidence here introduced? *A.* Yes, I think I could.

"*Q.* You think you can do that? *A.* Yes, sir."

This is all the examination that was made of the juror. At its close the defendant's counsel urged upon the court that it was defendant's right to have a fair jury; that there were a great many jurymen in the county; that it was no trouble to get a fair jury, and that therefore there was no necessity for having this man sit on the jury with his mind entertaining in the least any impressions upon the merits of the case. But the court decided that the juror was competent and he was accepted. The record shows that defendant's peremptory challenges were all exhausted.

In these days of general and rapid dissemination of news and of events, where rumors of crimes are spread by means of newspapers and other agencies rapidly throughout the country, and are brought to the attention of every intelligent citizen, the rule in relation to information possessed by jurors has necessarily become somewhat changed, and the strict enforcement of a lack of knowledge on the subject to be adjudicated necessarily somewhat relaxed, and it would work a miscarriage of justice if the simple reading of newspaper reports of crimes that have been committed, or the listening to rumors concerning the commission of such crimes, should be held to exclude jurors from the

trial of criminal cases; and no court in this age, we think, would go to the extent of holding a juror incompetent simply because he had read newspaper reports of the perpetration of a crime, or had heard rumors concerning its perpetration.

But while regarding the changed conditions of society in this respect, and giving to them due consideration, it will not do to go to the other extreme and relax the rule to the extent of depriving a defendant of his constitutional right to be tried by an impartial jury. It must be conceded that, if a juror has an opinion as to the guilt or innocence of a defendant, and that opinion is so material and tangible and fixed as to require evidence to remove it, he does not enter the jury box as an impartial juror; and it makes no difference whether that opinion has been obtained through the medium of newspapers which professed to recite the facts, and which recitation the juror believed, or whether it was obtained by listening to the rehearsal of the facts by some individual. The material thing to be ascertained is, whether the mind of the juror is impartial and whether he has an opinion, which must always be distinguished from a mere floating impression, as to the guilt or innocence of the defendant. How he came by that opinion is entirely immaterial. If a juror testifies that he has read a newspaper account and that, if such account be true, he believes the defendant to be either guilty or innocent, as the case may be, he manifestly would be a competent juror, for he has no fixed opinion as to whether the facts which have been related to him are true or not. Hence he approaches the examination of the case with a mind perfectly susceptible to receive the truth as it appears from the testimony presented. But where he states that he has heard a recital of the facts, whether by a newspaper or by an individual statement, and that he believes the facts stated, and from such statements that he is in a

14—9 WASH.

condition of mind that it would take evidence to remove the belief that he already entertains, then it seems equally manifest that he comes to the investigation of the case with a bias either for or against the defendant, and is therefore not, in the meaning of the law, an impartial juror.

Now it is true that the juror in this case finally said, after being questioned by the court, that he thought he could wholly lay aside the impressions he had received from reading the newspapers, and try the case wholly upon the evidence introduced; but this statement gains no strength from its having been the last statement made, for when the preceding question was put to him his answer was that he could "if he could get stronger evidence." Stronger evidence of what? The same evidence that would be required to convict in the mind of one juror ought to be sufficient to convict in the mind of another juror; and if the presumption is that the defendant must prove his innocence by affirmative defense, it would seem that the evidence which he offered in defense, if it was strong enough to carry conviction to the mind of a person who was absolutely without any knowledge on the subject, ought to be strong enough to carry conviction to the minds of all the jurors. While, on the other hand, if the true presumption is to prevail, viz., that he is to be held innocent until proven guilty, no less amount of proof ought to suffice to convict him in the mind of this juror than would warrant his conviction in the minds of the other jurors. In other words, there ought not to be a man on the jury who is influenced by testimony or information obtained outside of the trial of the case.

This condition, it seems to us, appears plainly from the examination of this juror by the court, laying aside the examination by the counsel for the defense, which might possibly have a tendency to mislead the juror and cause him to answer unwittingly with regard to his impressions;

for when the court asked him if he could hear and determine this cause with the same degree of impartiality and fairness that he could if he had heard nothing about it, his answer was that he thought it would take a little more evidence than it would if he had never heard anything about it; and when asked if what he read in the newspapers would be liable to influence him while acting as a juror, he frankly stated that it would unless he had something that was strong on the other side. The whole testimony shows that the witness' mind had been made up as to the guilt or innocence of this defendant; and when that conclusively appears from the examination it will not be left to the final announcement of the juror to decide whether or not he thinks he can wholly lay aside those convictions and try the case upon the testimony presented. Nor do we think that a case can be found which would sustain the court in refusing to grant a challenge to a juror who shows by his examination that he is as incompetent as the juror in this case.

The first case cited by the respondent to sustain his contention that the juror was competent is *Holt v. People*, 13 Mich. 228. There the answer of the juror was, ''I have formed a partial opinion as to the guilt or innocence of the defendant from rumors heard in the street, but not a positive opinion.'' Upon this statement, respondent's counsel challenged the juror for cause, and without further examination the challenge was overruled; and the court, after commenting on the fact that under the present conditions of society it was frequently impossible for jurors to come to the investigation of criminal charges with minds entirely unimpressed with what they may have heard in regard to them, or entirely without information concerning them, sustained the lower court on the ground that his mere statement did not disqualify him, but stated that further inquiries might possibly have shown that it was of a na-

ture to constitute disqualification; but as the defendant did not see fit to make them, and as the prosecution was not called upon to enter on the investigation if the defendant left it imperfect, and before he had a *prima facie* cause for exclusion, that they would not interfere with the discretion of the judge.

*Stephens v. People*, 38 Mich. 739, also cited by the respondent, a case which refers to *Holt v. People*, *supra*, and endorses it, notwithstanding lays down the rule that a juror's opinion as to the guilt or innocence of the accused must not be such as will prevent his giving due weight to the presumption of innocence, and that a juror who is so impressed with the guilt of the accused as to need evidence to overcome his impressions (which it will be seen is exactly the condition of mind testified to by the juror in this case), is not impartial, and the court says that it is useless under such circumstances to ask him whether he can return a just and impartial verdict. In that case the plaintiff in error was convicted of keeping a house of prostitution. Six of the persons who were then summoned as jurors on being challenged stated under oath that they had formed an opinion from what they had heard or from reputation, that the house kept by the defendant was a house of prostitution, and some of them stated that their opinions or impressions were of that character that it would require evidence to remove them. In each instance, when the defense had gone through with the examination of the juror, the judge took him in hand, and the following is his examination of the first:

"*Q.* Will you state whether the information you have received or the impression you have formed in regard to the house there is of such a positive character that it would be impossible for you to sit here and hear the testimony and decide impartially between the people of this state and the prisoner at the bar as to whether she was guilty of the

crime charged within the date mentioned in this informa-
tion?    A.  I think not, sir.

"Q.  You think you could sit?    A.  Yes, sir."

The court thereupon overruled the challenge.    In that
case there was a statute in the state of Michigan providing
that—

"The previous formation or expression of opinion or
impression, not positive in its character, in reference to
the circumstances upon which any criminal prosecution is
based, or in reference to the guilt or innocence of the pris-
oner, or a present opinion or impression in reference
thereto, such opinion or impression not being positive in
its character, or not being based on personal knowledge of
the facts in the case, shall not be a sufficient ground of
challenge for principal cause, to any person who is other-
wise legally qualified to serve as a juror upon the trial of
such action: *Provided*, The person proposed as a juror,
who may have formed or expressed, or has such opinion or
impression as aforesaid, shall declare on oath that he verily
believes that he can render an impartial verdict according
to the evidence submitted to the jury on such trial: *Pro-
vided further*, The court shall be satisfied that the person
so proposed as a juror does not entertain such a present
opinion as would influence his verdict as a juror."

But, notwithstanding this statute and the large discre-
tion which vested thereby in the trial court, the supreme
court of Michigan held that it was error in the court to re-
fuse to allow the challenge upon the question and answer
above recited.    They say that the constitution of Michigan
provides that "In every criminal prosecution the accused
shall have the right to a speedy and public trial by an im-
partial jury," and that no legislation can take this right
away.

"The question on this record," says the court, "is,
whether that jury can be an impartial one whose members
are already so impressed with the guilt of the accused that
evidence would be required to overcome such impressions.

It seems to us that this question needs only to be stated; it calls for no discussion.   This woman, instead of entering upon her trial supported by a presumption of innocence, was in the minds of the jury when they were impaneled condemned already; and by their own statements under oath it is manifest that this condemnation would stand against her until removed by evidence.   Under such circumstances it is idle to inquire of jurors whether or not they can return just and impartial verdicts; the more clear and positive were their previous impressions of guilt the more certain may they be that they can act impartially in condemning the guilty party.   They go into the jury box in a state of mind that is well calculated to give a color of guilt to all the evidence; and if the accused escapes conviction, it will not be because the evidence has [not] established guilt beyond a reasonable doubt, but because an accused party, condemned in advance, and called upon to exculpate himself before a prejudiced tribunal, has succeeded in doing so.''

Sec. 22 of art. 1 of the constitution of this state guarantees to every person defendant in a criminal prosecution the right to a trial by an impartial jury of the county in which the offense is alleged to have been committed; and it seems evident to us from the statements made by the juror Kile in this case that he was not an impartial juror. If all the jurors who tried the cause were concededly in the same condition of mind that Kile was, viz., presuming that his convictions were against the defendant, were in a state of mind to consider the defendant guilty of the crime charged until there was strong evidence to support the theory of innocence, the trial would have been little less than a farce, and our boasted constitutional privilege of a trial by an impartial jury would be a privilege existing more in theory than practice.   Cases might possibly arise where, by reason of the heinousness of the crime and the great publicity that would naturally be given to it, it would be difficult to obtain jurors that had not more or less information, and possibly some impression, as to the guilt

or innocence of the defendant; but no such state of facts is shown in this cause. It was urged upon the court at the time that an absolutely impartial jury could be obtained, and there was no good reason why the court should have arbitrarily imposed this juror, entertaining the convictions which he had expressed, upon this defendant.

It is generally contended that a different rule should obtain in discharging a juror where his competency is called in question than the rule which should govern in retaining him. No possible harm, at least no harm that rises above a little temporary inconvenience or additional costs, which ought not to be seriously considered where a citizen is on trial for his life or liberty, can be done by discharging the juror; but very grave harm may come from retaining him. This doctrine is very clearly and concisely announced in *State v. Miller*, 29 Kan. 43. The court there says:

"We can hardly see how the court could commit substantial error by discharging any person from the jury, when twelve other good, lawful and competent men could easily be had to serve on the jury. There is an immense difference between discharging a juror, and retaining him. To discharge can seldom, if ever, do any harm; while to retain him, if his competency is doubtful, may do an immense injury to one party or the other."

And in passing upon the amount of credit that should be given to the statement of a juror that he could impartially try the case, the court says:

"Men are seldom conscious of being biased or prejudiced, or of being in such a condition that they could not try any case impartially, and be governed entirely by the evidence introduced on the trial of the case."

We think, under all the circumstances of this case, that the challenge to the juror should have been sustained; that his examination showed that he was not a competent juror, and the presumption is that the rights of the de-

fendant were jeopardized by the action of the court in compelling him to accept him as a juror.

We have examined the other errors alleged, but think the appellant has no substantial ground for complaint. The instructions as a whole were favorable to the defendant, and the instructions which were asked by the defendant, which properly stated the law, had already been substantially given by the court.

There is, however, one method of proceeding which, in view of another trial, might well be spoken of here. Upon attempting to sustain the testimony of witness Gordon by showing that he had made statements out of court similar to the affidavit which he had filed in the case, the witnesses were allowed to testify that they had read the affidavit or had heard the testimony of the witness Gordon, and that the statements that he had made prior to that time were the same as those made in the affidavit. For instance, Mr. Winstock, called by the prosecution in rebuttal, was handed exhibit B, being the affidavit made by Gordon in the prosecuting attorney's office, and the following question was asked:

"You may state, Mr. Winstock, how the statement that he made to you as to his being present and witnessing the shooting of Phil. Dawe corresponds with the statement made in that affidavit as to his being present and witnessing the shooting of Phil. Dawe. *Answer:* Absolutely the same."

The following question was then put to Chief Jackson by the prosecuting attorney:

"How did the statement made by Mr. Gordon to you a few minutes after the shooting correspond with the statement that he, Gordon, made in the trial of this case to this jury? *Answer:* In substance it is the same."

We think this is not a fair method or way of introducing this testimony. The witness ought to have been re-

quired to have stated what the statement was that was made to him by Gordon shortly after the shooting occurred and let the jury determine whether it was substantially the same statement that was testified to by Gordon in court, or was sworn to by him in his affidavit. It is true, as was argued by the attorney for respondent, that the truth of the statements of these corroborating witnesses might have been elicited by cross examination, but the testimony that the statements were the same had already gone to the jury and had doubtless made their impression upon the minds of the jury, and we do not think that the burden ought to be imposed upon the defense of eradicating from the minds of the jury impressions which had been made by incompetent testimony. Certainly a more truth eliciting method would have been the one above suggested, viz., for the witness to have stated what the statements were, and for the jury to have made the comparisons and drawn the conclusions. We do not now say that we would reverse the case were this the only error found in the record, but would recommend upon the retrial of the case the method suggested.

But, for the error in refusing to sustain the challenge to the juror Kile, the judgment must be reversed, and the cause remanded with instructions to grant a new trial.

ANDERS, SCOTT, STILES and HOYT, JJ., concur.