[No. 4294.   Decided October 1, 1902.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK STENTZ, *Appellant.*

CRIMINAL LAW — COMPETENCY OF JUROR — KNOWLEDGE OF MATERIAL FACTS — CHALLENGEABLE FOR BIAS.

Where one whose name had been indorsed on an information as a witness for the state is drawn as a juror, he is incompetent to serve on the ground of bias, even though he disclaims any, when he has knowledge of material controverted facts in the case; and the action of the court in forcing the defendant to exhaust his last peremptory challenge against such juror is reversible error.

SAME — DUTY OF PROSECUTING ATTORNEY TO INFORM COURT.

Where the prosecuting attorney who has inquired into the facts connected with an accusation of crime, and indorsed the names of witnesses upon an information laid by him, knows that a person called as a juror is a material witness to controverted facts constituting the offense, it is his duty to so inform the court, to the end that he may assist the administration of justice in upholding the constitutional guaranty of trial by an impartial jury.

Appeal from Superior Court, Spokane County.—Hon. WILLIAM E. RICHARDSON, Judge.   Reversed.

*Sullivan, Nuzum & Nuzum,* for appellant.

*Horace Kimball,* Prosecuting Attorney, and *Miles Poindexter,* for the State.

The opinion of·the court was delivered by

WHITE, J.—The information in this case was filed by the prosecuting attorney of Spokane county on November 5, 1901, charging the appellant with the crime of manslaughter.   The information, omitting formal parts, is as follows:

"That the said defendant, Frank Stentz, in the county of Spokane, and state of Washington, on the 16th day of October, 1901, did unlawfully, feloniously, wantonly, neg-

ligently, recklessly and wilfully drive a team of two horses, the said horses then and there being hitched to a wagon upon a certain road, the same then and there being a public highway, in a manner likely to endanger the persons and lives of others, and so did then and there in the commission of said unlawful act unlawfully and feloniously run and drive the said horses and wagon on, over and upon M. W. Orton, and so did then and thereby, as aforesaid, unlawfully and feloniously inflict upon the said M. W. Orton certain mortal injuries, by and on account of which injuries the said M. W. Orton then and there died, and so the said Frank Stentz did then and there, in the manner aforesaid, involuntarily, but in the commission of the unlawful act aforesaid, unlawfully and feloniously slay and kill the said M. W. Orton."

On the information, the name of R. M. Sperry, among others, was indorsed as a witness for the state. While impaneling the jury in the cause, said R. M. Sperry was drawn as a juror, and, upon being questioned as to his competency, testified in substance that he knew the defendant by sight, and that he had no opinion as to the defendant's guilt or innocence. This question was then asked him by the prosecuting attorney: "I ask you to state whether or not from any cause, whether I have mentioned it or not, you would be hindered or impeded in giving a fair and impartial trial to the defendant." He answered: "The only cause is that I am liable to be a witness in the case. For that reason, I guess I would not be eligible to sit on the jury." He further testified that that fact would not prejudice or bias him for or against the defendant, and that he felt satisfied he could give the defendant a fair and impartial trial. On cross-examination, he said he had not been subpoenaed as a witness, but he "distrusted that there was a subpoena issued for him which had not yet been served;" that "some of the prosecuting attorneys had talked with him with refer-

ence to something in the case." The following appears
from the record:

"Mr. Nuzum (for defendant): I submit, your Honor,
that this juror's name appears as a witness in this in-
formation—indorsed on the information, and although the
subpoena has not been served on him, his name appears
here as one of the witnesses for the state, and we submit
a challenge for cause.

"Mr. Poindexter (prosecuting attorney): I don't know
anything that would exclude him on that ground; he
states positively he formed no opinion as to the guilt or
innocence of the defendant.

"The court: I think a juror may be called as a witness
in a case; but I don't think that the court, in the exercise of
sound discretion, would permit a party who is likely to be
called as a witness, if he is advised of that fact be-
forehand, to sit on a jury. The answer that this juror
makes to the question would not disqualify him as a
juror. If you are able to state at this time, Mr. Poin-
dexter, that you will not call him as a witness in the case,
I think the challenge ought to be denied; if he is going to
be a witness in the case, I think the objection ought to be
sustained.

"Mr. Poindexter: I will say I will not call him as a
witness, if he is chosen as a juror.

"Mr. Nuzum: On that statement alone I think our
challenge ought to be sustained. There is something he
wants to prove by him if he don't sit, but he is willing to
have him sit as a juror without testifying. I don't think
that comes within the provision of the law that we are en-
titled to a fair and impartial trial, as in a case of this kind
we are entitled.

"The court: As I have already stated, I don't think
the juror's answers are sufficient to disqualify him. The
only ground upon which I could sustain a challenge in this
case is that the juror might be called as a witness. I don't
think the court ought to permit a juror to sit if the court
is advised that he is going to be called as a witness.

"Mr. Sullivan: I think when the prosecutor says if

he is called on the jury he will not call him as a witness, I think that ought to disqualify the juror; they have talked to him, we haven't.

"The court: The challenge is denied.

"Defendant excepts. Exception allowed."

The impaneling of the jury in the case then proceeded, the appellant having exercised his fifth peremptory challenge by excusing O. W. Piper, one of the jurymen. Thereupon one J. E. Gibbs was drawn as a juryman, and, upon being questioned as to his competency and qualifications, by the counsel for the state, testified in substance: That he had formed an opinion from reading newspaper articles; that he had no fixed opinion; that he could disregard it; that he still had the opinion so formed; that it would require some evidence to remove it; that what he had read would have no weight, or affect him in any way upon the trial. This juror was challenged by the appellant, and the challenge denied. The appellant thereupon excused the juror Sperry, thereby exercising his sixth and last peremptory challenge. The impaneling of the jury was then completed. The jury, after a trial, returned a verdict of guilty. On this verdict, judgment was entered.

The evidence in this case, exclusive of the testimony of the juror Sperry, tended to show that there were four men in a wagon drawn by a bay and a gray horse; that this wagon ran over the deceased, who was on a bicycle, thereby causing his death; that the team was running towards Cheney, and on the public road; that the driver was holding the lines tightly. The deputy sheriff testified that he had a talk with the accused after his arrest. The appellant told the deputy sheriff that the horses were running away; that when he went to turn to the right, in order to pass the man on the bicycle, the man turned the same way, and he tried to turn the other way, but the

team got beyond his control, striking the man's bicycle; that he did not know until after he was arrested that he had run over and killed the man. There was evidence tending to show that, after the team ran over the deceased the persons in the wagon attempted to avoid others, and went on an unfrequented road. There was evidence tending to show that the appellant and the three others in the wagon were out on a hunting expedition; that they had two kegs of beer, and had been drinking beer before the commission of the offense charged, and that there was also a small demijohn of whiskey in their possession. The killing of Orton took place very near the junction of the Mullinix and Lance Hill roads, about a mile and a half or two miles from Cheney. The place where the juror Sperry met the men in the wagon was about two miles southwest of this point. Mr. Sperry was called by the state as a witness, and testified:

"That a team, one horse light and the other dark, hitched to a wagon with four men in it, passed him on the public road about eight o'clock on the morning of the commission of the offense; that the men in the wagon were acting rather jolly; that they hallooed and yelled at him; that their actions were as if they were in pretty good spirits; that they motioned their hands to him, and hallooed something, but he could not distinguish what they said; that they were driving pretty fast,—unusually fast; that the fact that they were driving so fast attracted his attention; that he did not consider the team was running away; that they were going towards Cheney." "Q. Did they increase the speed while you saw them? A. Yes. They increased the speed some. Q. What did they do with reference to that? A. Well, when I met them they were hallooing, and I did not recognize who they were, and I presumed it was somebody that knew me, and I threw up my hand and said, 'Halloo.' This is when they went by. And the fellow that was driving he kind o' came up this way (indi-

cating) with the lines and gave a kind of whoop as though they were having a good time, and then they went a little faster."

He further identified the appellant as the man who was driving. The first error assigned is the denial of the challenge for cause by the court to the juror Sperry. The constitution of the state provides that an accused person shall be tried by an impartial jury, and that offenses heretofore required to be prosecuted by indictment may be prosecuted by information, as shall be prescribed by law. It is the duty of the prosecuting attorney, whenever a public offense has been committed, and the party charged is not under indictment for the offense, and the court is in session, and the grand jury is not in session, to prosecute the offender by information. § 6802, Bal. Code. In order to file such information, it is the duty of the prosecuting attorney to inquire into and make full examination of all the facts and circumstances touching the commission of the offense. The names of the witnesses known to the prosecuting attorney at the time of filing the information must be indorsed thereon. § 6832, Bal. Code. The name of the juror Sperry was indorsed on the information against the appellant, at the time the information was filed. From that fact, the law presumes that the prosecuting attorney knew the facts that such witness would testify to. Under the law, when the grand jury is not in session the prosecuting attorney performs the duties appertaining to the grand jury. He inquires into the commission of the offense. He performs a most important duty. As such officer, he is the sworn minister of justice, whose duty it is to see that the innocent are protected, as well as that the guilty are brought to punishment. It is as much his duty as it is that of the court, to see to it that no one is convicted of a crime excepting in the manner

provided by law.    If he knows that an impartial jury is
not being selected when the accused is brought to trial, it
is his duty, as a representative of the state, to make that
fact known to the court, so that constitutional and legal
requirements may be adhered to.    The state is just as
much interested in preserving constitutional requirements
in the trial of an accused person as in prosecuting the in-
fraction of the laws.    As was said by Chief Justice CHRIS-
TIANCY, *in Hurd v. People*, 25 Mich. 406:

"The prosecuting officer represents the public interest,
which can never be promoted by the conviction of the
innocent.    His object, like that of the court, should be
simply justice; and he has no right to sacrifice this to any
pride of professional success.    And however strong may
be his belief of the prisoner's guilt, he must remember
that, though unfair means may happen to result in doing
justice to the prisoner in the particular case, yet, justice
so attained is unjust and dangerous to the whole com-
munity."

Here, the prosecuting attorney knew that the testimony
that this juror would give went to the very gist of the of-
fense.    The testimony of Mr. Sperry was a step towards
the conviction of the appellant, and had a direct bearing on
the guilt of the accused.    Mr. Sperry was not called upon
to testify as to independent facts necessary to be proven,—
for instance, that the place where the offense occurred was
in the county in which the venue was laid, or that he
knew the person alleged to have been killed, in his life
time, and that he knew he was dead, or as to the character
of the accused as a peaceable and law-abiding citizen, or
as to the character of a witness for truthfulness.    While
such facts are necessary to be shown, or may be shown, they
are just as consistent with the guilt of any other person
as with the guilt of the accused, and their establishment
does not go towards the conviction of the accused person

of the crime charged against him. A witness called upon to testify to such facts might not be incompetent as a juror, but a witness who knows about the controverted facts in the case,—the *res gestae,* as we might say,—such as the reckless driving of the accused on the public highway immediately preceding the commission of the offense, a short distance from where the offense was committed, it seems to us knew material, controverted facts that would of necessity bias and influence his judgment as a juror. To permit such a person to sit upon the jury was to deprive the accused of a trial by an impartial jury. It is true that we have a statute that declares:

"A juror may be examined by either party as a witness, if he be otherwise competent. If he be not so examined, he shall not communicate any private knowledge or information that he may have of the matter in controversy to his fellow jurors, nor be governed by the same in giving his verdict." § 5001, Bal. Code.

This section must be construed in connection with the constitutional guaranty to an accused person of an impartial trial, and the statutes relative to challenging jurors. The law, by simply declaring that a juror shall not be governed by any knowledge that he may have of the facts, does not obviate the bias that may really exist in the mind of the juror. A juror may be challenged for actual bias. § 4988, Bal. Code. Actual bias is defined as "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the trier, in the exercise of a sound discretion, that he [the juror] cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." § 4983, Bal. Code. Can it be said that, if the court had known of the knowledge of this juror of the controverted facts in the case, it would have allowed him to act as a

juror? We think not. If the court had known the facts
as to the knowledge of the juror, and had not sustained
a challenge for actual bias, we think it would have been
an abuse of sound discretion. A jury has been defined as
a body of men who are sworn to declare the facts of a
case as they are proven from the evidence placed before
them. 17 Am. & Eng. Enc. Law (2d ed.) 1095. Our
Code (Bal. Code, § 4730) defines it as "a body of men
temporarily selected from the qualified inhabitants of a
particular district and invested with power (1) to present
or indict a person for a public offense; (2) to try a ques-
tion of fact." Under the constitutional provisions defining
the rights of accused persons, the appellant had the right,
not only to be tried by an impartial jury, but to defend in
person and by counsel, and to meet the witnesses against
him face to face. Art. 1, § 22, constitution. This means
that the examination of such a witness shall be in open
court, in the presence of the accused, with the right of
the accused to cross-examine such witness as to facts testi-
fied to by him,—not that the witness may carry into the
jury room, in the recesses of his own mind, knowledge
of material, controverted facts which of necessity must
bias his judgment. Further, in a criminal prosecution
the verdict must be the unanimous verdict of twelve im-
partial men, not the verdict of eleven impartial men or
any less number than twelve. It is a violation of the
defendant's constitutional rights to deny his challenge to
a juror who has formed, from newspaper accounts, an opin-
ion as to the defendant's guilt, where it would take strong
evidence to change such opinion, even though the juror
says he could lay aside his opinion, and try the case wholly
upon the evidence, as if he had heard nothing about it.
*State v. Murphy,* 9 Wash. 204 (37 Pac. 420). It needs no
argument to show that it would require strong evidence

to remove from the juror Sperry's mind the fact that the accused was driving recklessly along the highway just preceding the commission of the offense, and that this was an important fact as to his guilt. The juror Sperry seemed to realize this fact himself, judging from his answers. If all the jurors who tried the cause had been personally cognizant of the same facts as the juror Sperry conviction would inevitably have followed, and, as was said in the case of *State v. Murphy, supra,* "the trial would have been little less than a farce, and our boasted constitutional privilege of a trial by an impartial jury would be a privilege existing more in theory than practice." The discretion of the trial court to determine partiality or impartiality in a jury is subject to review by the appellate court under the constitutional guaranty to the accused of a trial by an impartial jury. *State v. Rutten,* 13 Wash. 203 (43 Pac. 30).

A refusal to sustain challenges for proper cause, necessitating peremptory challenges on the part of the accused, will be considered on appeal as prejudicial where the accused has been compelled subsequently to exhaust all his peremptory challenges before the final selection of the jury. *State v. Rutten, supra.* An examination of this record discloses that it is a very close question whether the juror Gibbs was a qualified juror under the rule laid down in *State v. Murphy, supra,* but, conceding that he was, he had formed an opinion that it would require some evidence to remove; and the accused, in exercising his last peremptory challenge, had to choose between this juror and the juror Sperry. But for the presence of the juror Sperry in the box, it is fair to presume that the last peremptory challenge would have been exercised in excusing the juror Gibbs. As is said by the supreme court of Pennsylvania, in *Commonwealth v. Joliffe,* 7 Watts, 585, "that a witness

is supposed to stand as a partisan is shown by more than one passage in the law." And further, that "the presumption in the case of a witness, therefore, is against impartiality." The juror Sperry's name was indorsed as a witness for the state on the information. The presumption was against his impartiality. This of itself should have induced caution in the court in denying the challenge. . Under our practice, a juror who is examined on his *voir dire* is not permitted to disclose the facts within his knowledge. But here the prosecuting attorney knew that the juror was a material witness to controverted facts constituting the offense. Under such circumstances, it was his duty to have declared that fact to the court, or to have joined in the challenge. The supreme court of Arkansas, in *Hardin v. State,* 66 Ark. 53 (48 S. W. 904), in commenting upon *Vance v. State,* 56 Ark. 402 (19 S. W. 1066), says:

" . . . When it is apparent that the juror has formed an opinion from his own knowledge of the facts of the case, or that, from his connection with the prosecution or defense, he is not an impartial juror, his statement that he can give the defendant a fair and impartial trial will not remove the objection to his competency, for it is possible that the most prejudiced man might be willing to say, and even believe, that he would be an impartial juror. Had this juror answered that it would take no evidence to remove his opinion, he would have still been incompetent; and, even had he disclaimed any opinion, it is doubtful if he would have been a competent juror."

It has been held that one summoned as a witness in a criminal case is not competent to serve as a juror. *Atkins v. State,* 60 Ala. 45 ; *Commander v. State,* 60 Ala. 1 ; *Baldwin v. State,* 111 Ala. 11 (20 South. 528). It has been held that a juror who is voluntarily attending court for the purpose of testifying as to the good character of the accused is not qualified to sit as a juror; the court saying:

"The danger of bias is not removed by showing that the witness has no knowledge of the more material facts bearing upon the issue, and expects to testify only as to the character of a defendant charged with a felony." *State v. Barber,* 113 N. C. 711 (18 S. E. 515).

There are cases, however, to the contrary: *White v. State,* 73 Miss. 50 (19 South. 97); *Fellows's Case,* 5 Greenl. 333. The jurors in the last two cases were not called to testify as to the material facts in the case. In the Mississippi case and in the Maine case they were witnesses as to character only. The question of bias was not raised in these cases. There is a dearth of authority on the direct point whether or not a person who has been subpoenaed, or whose name is indorsed on the information as a witness, or who is in attendance as a witness, is competent to sit as a juror in the trial of a case. The case nearest in point is that of *State v. Martin,* 28 Mo. 530. Martin was indicted for stealing cattle. The juror, on his *voir dire,* stated that he knew the cattle alleged to have been stolen; that his brother had once owned them and had sold them to a man named Kerr, who had subsequently sold them to the person alleged in the indictment to be the owner. The Missouri supreme court sustained the lower court in holding that the juror was competent on the express ground that the ownership of the cattle was not a controverted fact. The statute of Missouri provided that it should be a good cause for a challenge to a juror that he had formed an opinion upon the issues or any material fact to be tried. The court said:

"No question has heretofore arisen upon the construction of this provision of our criminal practice act; nor have we observed any case in any other state, where similar statutes have been passed upon by their courts. .Ordinarily, there cannot be much practical difficulty in enforcing what seems to be the spirit and object of the provision, which is to secure impartial juries; and when questions of doubtful character arise, the courts of criminal jurisdiction—as a

matter of convenience and precaution, and with a view to avoid the possibility of subjecting the state to unnecessary cost, as well as to secure to the accused every reasonable satisfaction in selecting his triers—would usually set aside persons of questionable competency, when a bystander could be called in without delay, who would be unexceptionable to all parties. It is probably because of this practice on the circuits—and a very commendable one, too— that no cases of this sort have ever come up to this court. . . . It is material to the prosecution to establish that the crime alleged was committed at a place within the county, for this is essential to the jurisdiction of the court. Does the knowledge that the alleged locality of an offense is within the county named in the indictment disqualify a juror from sitting on the case? We see at once that this fact, material as it undoubtedly is to the success of the prosecution, has no connection whatever with the guilt or innocence of the party accused, and that it is a fact known probably to nine-tenths of the inhabitants of the county, and therefore in all probability will not be controverted on the trial. In an indictment for murder, the fact of the killing is an essential of crime; but would a man, who accidentally was present at the burial of the murdered person and saw his dead body, and knew him when alive, be excluded as an incompetent juror on the trial of a supposed manslayer? Such facts as we have referred to are material in one sense. They constitute the basis of the prosecution; but they are independent facts, having no bearing on the question to be tried of the guilt or innocence of the accused. They are just as consistent with the guilt of any other person as they would be with the guilt of the accused; and their establishment does not make a single step toward a conviction. If these facts are controverted facts, it may be that a person who has formed an opinion upon them ought to be excluded from sitting on the jury; but where they have no bearing on the guilt of the accused and are likewise not controverted on the trial, it is plain that the juror is, in every material respect, impartial and competent."

When the facts, however, are material to a conviction, as

in this case proof of wantonly, negligently, recklessly, and wilfully driving a team over the public roads, thereby causing the death of a person, we think the knowledge of such driving immediately preceding the commission of the offense was material, and a juror possessing the same cannot be said to go into a jury box in that state of mind in which the law contemplates a juror shall be when called upon to try one accused of a crime. Such a juror cannot be said to be an impartial one, notwithstanding he says he is.

We have alluded to the possible incompetency of juror Gibbs. We do not mean, however, to pass upon that question, or upon any of the other errors assigned. In all probability they will not occur on the next trial.

Inasmuch as the appellant was compelled to get rid of the juror Sperry by a peremptory challenge, the accused was deprived of one peremptory challenge to which he was by law entitled. For that reason, the judgment of the court is reversed, and the cause remanded for a new trial.

REAVIS, C. J., and HADLEY, FULLERTON, MOUNT, ANDERS and DUNBAR, JJ., concur.