[No. 8720.   Department One.   May 31, 1910.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH WARE, *Appellant*.[1]

JURY—COMPETENCY—OPINIONS—PRESUMPTION OF INNOCENCE.   A juror is not disqualified by the opinion that, when a homicide is admitted by the accused, it will be presumed that he was guilty of a crime until evidence of justification is submitted; and this does not conflict with the rule that the juror must, in proper cases, accord the accused the presumption of innocence (Chadwick, J., dissenting).

CRIMINAL LAW—INSTRUCTIONS—COMMENT ON EVIDENCE—WITH-DRAWING ISSUE FROM JURY.   Where the accused admitted committing a homicide, following a dispute relative to articles of property alleged by the deceased to have been stolen by the accused's son, it is not an unlawful comment on the evidence for the court to withdraw from the consideration of the jury the merits or demerits of the controversy over the articles, as having nothing to do with the issue of self-defense, which was the only issue.

CRIMINAL LAW—STATUTES—REPEAL—SAVINGS CLAUSE.   The savings clause in the penal code of 1909 (Rem. & Bal. Code, § 2294), providing that nothing in this act shall apply to an offense committed before the day when this act shall take effect and that such offense shall be punished under existing laws as if this act had not been passed, is sufficient to continue in force the penal provisions repealed by the act until the date when the new act went into effect.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered October 11, 1909, upon a trial and conviction of manslaughter.   Affirmed.

*Gus L. Thacker* and *Hayden & Langhorne*, for appellant.
*J. R. Buxton* and *W. E. Bishop*, for respondent.

GOSE, J.—The appellant was tried upon a charge of murder in the first degree, found guilty of manslaughter, and has appealed from the judgment entered upon the verdict.   The appellant's first contention is that the court erred in denying his challenge to juror W. C. Stocking.   It was admitted, both during the examination of the juror on his *voir dire*,

[1]Reported in 109 Pac. 359.

and throughout the trial of the case, that the appellant had shot and killed the deceased, but it was asserted that he did so in self-defense. The juror was examined and cross-examined at length, but the substance of his answers is that he had read "something" of the account of the killing in a newspaper; had heard it discussed "a little" by one of his neighbors; that from what he had heard and read he formed no opinion as to the guilt or innocence of the appellant "that would be permanent;" that it was his opinion that, if a person takes a life, he has committed a crime, unless the circumstances justified the killing; that he had no opinion as to whether any justification existed in this case; that if the evidence should disclose that the appellant was justified in killing the deceased, he would give him the benefit of that defense; that he had no prejudice against the appellant, and entertained no opinion that would prevent him from giving him a fair and impartial trial according to the law and the evidence, and that he would take the law of the case from the court. More briefly expressed, the juror's view was that, where the killing is admitted, a crime is presumed until some evidence of justification has been submitted. In this respect his view of the case was in harmony with the law. Speaking upon the identical question, in *State v. Payne*, 10 Wash. 545, 39 Pac. 157, at page 553, this court said:

"If he kills another he must, in the absence of a showing to the contrary, be presumed to have intended to kill him. And while it is true that even although he did intend to kill he may not be guilty of murder, or of any other crime, yet if he is not, it is by reason of some fact in justification of his action, the burden of proving which public policy demands should be cast upon him. . . . The proper instruction is that the presumption will have force unless there is something in the case to rebut it."

This view was adhered to in *State v. Clark*, *ante* p. 128, 107 Pac. 1047:

"The rule as generally stated is, that when the killing is shown, and self-defense is pleaded, it is incumbent upon the

accused to establish this defense, unless it is shown by the evidence offered by the prosecution to establish the killing." 21 Cyc. 883.

The same view is expressed in *State v. Cephus*, 6 Pen. (Del.) 160, 67 Atl. 150; *State v. Moss*, 77 S. C. 391, 57 S. E. 1098, and *State v. Peterson*, 149 N. C. 533, 63 S. E. 87.

The fact that a juror had formed or expressed an opinion that the defendant shot and killed the deceased did not disqualify him as a juror where the killing was conceded and self-defense claimed. *State v. O'Shea*, 60 Kan. 772, 57 Pac. 970; *State v. Everett*, 62 Kan. 275, 62 Pac. 657; *Tubb v. State*, 55 Tex. Cr. 606, 117 S. W. 858. The same general principle is announced in *State v. Boyce*, 24 Wash. 514, 64 Pac. 719. Indeed, we cannot conceive how a frank juror, who carefully weighed his words, could have answered differently. As we have seen, when one has taken a human life, the law does not presume that the homicide was justifiable, but presumes the contrary. We are not aware of any principle of law which requires the juror to accord a greater presumption of innocence to a defendant than the law accords him in the particular case. The learned trial court instructed "that where homicide is proven, the presumption is that it is murder in the second degree. If the state would elevate it to murder in the first degree, she must establish the characteristics of the crime, and if the defendant would reduce it to manslaughter the burden is on him." It is not argued in the briefs, nor was it claimed at the bar, that this instruction is erroneous; and as we have seen, such claim would not be tenable. This rule is not in conflict with the general rule that a juror must, in all proper cases, accord to the defendant the presumption of innocence, as announced in *Rose v. State*, 2 Wash. 310, 26 Pac. 264; *State v. Coella*, 3 Wash. 99, 28 Pac. 28; *State v. Murphy*, 9 Wash. 204, 37 Pac. 420; *State v. Wilcox*, 11 Wash. 215, 39 Pac. 368; *State v. Rutten*, 13 Wash. 203, 43 Pac. 30; *State v. Moody*, 18 Wash. 165, 51 Pac. 356, and *State v. Riley*, 36 Wash. 441, 78 Pac. 1001. Where the law

presumes innocence, the jury must indulge the same presump-
tion; but where, upon the admitted facts, the law presumes.
that a crime has been committed, a juror is not incompetent.
for indulging a like presumption.

The evidence shows that the appellant had lost certain.
articles of personal property, which were found in the posses-
sion of a son of the deceased, a child ten years of age, which
he claimed to have found, but which the appellant believed;
he had stolen. Relative to this property, the court instructed :.

"Before proceeding to instruct you upon this issue of self-
defense, I will try to *simplify this issue to some extent by-
eliminating such other considerations and matters as do not;
have anything to do with the issue of self-defense; and, first,
I instruct you that the merits or demerits of the controversy
over articles of property have nothing to do with this ques-
tion."

The appellant's second contention is that this instruction.
is a comment on the facts and violative of section 16, art. 4,.
of the constitution. We do not so read it. It was the right;
and duty of the court to withdraw immaterial testimony
from the consideration of the jury. In effect, that was what
the court did by this instruction. As we have observed, the
appellant admitted that he shot and killed the deceased, but
claimed that the deceased, following a conversation about the
property, suddenly became enraged, said to the appellant:
"I will cut your heart out for calling my boy a thief," and.
was in pursuit of him when he fired the fatal shot. It is ap-
parent that it was wholly immaterial whether the boy had
found or stolen the property. The only question for the
jury to determine was, whether the appellant was in such
actual or apparent peril when he fired the fatal shot that the.
law would justify the killing as an act of self-defense. Upon
this question the jury was fully and correctly instructed.
This was the only issue.

The deceased was killed on May 25, 1909, and the trial
occurred in September following. At that time the new-

criminal code was in force. The third and last point urged is that the court erred in overruling the demurrer to the information. The precise point pressed is that the new law, which took effect June 8, 1909, repealed the old law in respect to murder in the first degree, Rem. & Bal. Code, § 2726, and that there is no proper saving clause in the new law or elsewhere. We have heretofore held adversely to this contention. *State v. Hanover*, 55 Wash. 403, 104 Pac. 624, 107 Pac. 388; *State v. Newcomb, ante* p. 414, 109 Pac. 355.

Finding no error in the record, the judgment is affirmed.

RUDKIN, C. J., FULLERTON, and MORRIS, JJ., concur.

CHADWICK, J. (dissenting)—The rule that, when a killing is shown the law will presume that it is murder in the second degree, and the burden is upon the state to raise it to murder in the first degree, and upon the defendant to reduce it to a lower degree, or show that the killing was justifiable was, so far as I am able to find, first announced in *Hill's Case,* 2 Gratt. (Va.) 594. The rule, I believe, was unknown to the common law, but is now established in this country. It seems to have grown up in applying, or possibly misapplying, the common law rule that malice will be presumed from the fact of killing (2 Blackstone, Commentaries 201) but without its qualifications. The vice of the majority opinion lies not in the presumption, but in applying it to the examination of a juror upon his *voir dire.* That the rule should not be taken without proper qualifications or applied in any case to the examination of a juror, seems to me to be too plain for argument. Where the killing is admitted, as in this case, and the plea of justification is set up, and where the state will be put to no proof whatever so far as the killing is concerned, there can be no reason for the application of the rule. The presumption of crime attaching to the killing of a human being is an extremely delicate instrument in the machinery of justice. It should never be left to operate alone. Alone, it might work a denial of justice. But when applied under the

direction of the court, with proper caution, at the proper time, and with reference to other safeguarding principles of the law, it may be salutary. Justice, if it be justice, must be even handed. The scale must balance. If we are to put in the hand of the juror upon his *voir dire* the sword of the prosecution, we should insist that he also carry the shield of the defense—the presumption of innocence. Unless from his whole examination his mind shows this balance, he should be rejected.

In the case at bar the juror said that he was of the opinion that "if a person takes a life, he has committed a crime. Still there may be circumstances that would justify it." "I believe that any person who takes a life has committed a crime." "I think that any person who takes the life of another has committed a crime." In answer to the question: "You have an opinion that, because Ware shot and killed Corp, that he committed a crime?" he replied: "Yes, sir." "And you have that opinion with you now? A. Yes, sir." "There is no dispute but what Mr. Ware shot Mr. Corp. Assuming that to be true, then you have an opinion that he committed a crime by reason of the killing? A. Yes, sir." The juror said that he believed in the presumption of innocence, and in answer to the question: "How can you believe all that when you say that you believe a crime has been committed here?" replied: "I would give him a chance to prove himself." He further says that he was "open to conviction." Further said that he would enter upon the trial believing that a crime had been committed by the defendant. The juror has said, in legal effect: "I believe the defendant guilty and will believe him guilty until he has proved his innocence, or (to use the juror's words) has 'proved himself.' " The word "crime" has no uncertain meaning. Crimes, offenses, criminal offenses and public offenses, are synonymous. 2 Words & Phrases, p. 1736. They mean such violation of the law as will subject the offender to its pains and penalties. The juror had not been advised, and, in my judgment, it would have been improper for the court at

that time to have advised him that, when a killing is shown, the presumption that it is murder in the second degree follows. That is a rule designed to aid in extracting the truth from the testimony, and not to aid the court in the selection of jurors. Nor is there anything in the record to show that the juror indulged in such presumption, or had in mind the second degree of murder at all. Indeed, if this court is to presume anything in favor of the juror, we should presume that, when he says he believed, and would believe until he was convinced to the contrary, that a crime had been committed, he had in mind the crime of which the defendant stood charged —that is, murder in the first degree; and that, if he had not been possessed of that conviction, defendant might have been acquitted, or found guilty in some lesser degree than that returned by the jury.

It might be that some merit would attach to the argument of the majority had defendant been subject to one of two verdicts, guilty, or not guilty. But when we remember the included crimes to which the presumption relied upon does not attach, I cannot but feel that one of the first principles of the law—that a man shall be entitled to a fair trial at the hands of an impartial and unbiased jury—has been wrenched from its moorings. The cases cited by Judge Gose to the effect that, where a juror has formed or expressed an opinion that the defendant "shot and killed" the deceased, he is not disqualified, even though self-defense is claimed, do not touch the case we have before us. In the *O'Shea* case the court says that

"It appears upon further examination that the opinions so formed did not extend beyond the fact that O'Shea had fired the fatal shots. The fact that Dawson was shot by O'Shea, and that death resulted from the shooting, was not disputed. . . . Opinions upon matters not in issue do not disqualify the jurors entertaining them, and especially where, as in this case, it was shown that they had not formed or expressed an opinion as to the *guilt* or innocence of the defendant."

The case of *Everett*, quoting from the syllabus prepared by the court, says: " A juror is not disqualified to sit by reason of having formed or expressed an opinion upon matters involved in the case over which there is no dispute." In the *Tubb* case, it was said there was "no issue made or denial interposed that he killed the deceased; nor was there any semblance of justification under the law of self-defense or otherwise; and that the juror had formed no opinion upon the only issuable fact in the case was unquestioned." In that case the only issuable fact was insanity; whereas, in this case, there was a distinct issue, not only that there was no crime committed, but further, that the act was done in self-defense.

We have accepted this juror upon the theory that he has a right to go into the jury box with a belief that the killing was deliberate and malicious, beliefs which would not follow opinions formed or expressed upon nonissuable facts. Every accused person is entitled to a fair and unbiased jury, and it is time enough to base presumptions as to the minds of jurors upon the technical legal rule that the slayer of a human being is guilty of murder in the second degree, when the testimony is all in and can be explained to the juror and its relation to other rules of law made plain. In the administration of the law certain arbitrary rules have been found to be necessary, but over all there is a justice common to all humanity. It has found expression in that universal demand that a juror shall come to the trial of a cause with a mind free to consider not one rule of law, but all the law given him by the court— not one fact, but all the facts as they come from the lips of the witnesses. If, as is possible under the juror's answers, he deemed the defendant guilty of the crime of manslaughter, of which he was convicted, it can hardly be contended that he was a juror within these rules, or that the law invoked by the majority is applicable.

The challenge to the juror was overruled, and thereafter an admitted challenge to another juror was overruled. The

defendant was compelled to challenge the second juror. This. exhausted his peremptories, and he was forced to go to trial with the juror Stocking who, in my judgment, had clearly disqualified himself.

I believe that the juror should have been rejected under the authority of *State v. Moody*, 18 Wash. 165, 51 Pac. 356; *State v. Lattin*, 19 Wash. 57, 52 Pac. 314, and *State v. Riley*, 36 Wash. 441, 78 Pac. 1001. In those cases it was held that one who had such an opinion as to the guilt or innocence of the accused as would require evidence to remove, was subject to challenge for actual bias. As was said by Judge Dunbar in the *Moody* case:

"The answers of the juror in this case plainly show that the impression, as he terms it, which he had formed, really amounted to a conviction, and a fixed and stable opinion in regard to the guilt or innocence of the defendant, for he stated that his mind was convinced as to the guilt or innocence of the defendant, and frankly confessed that it would take testimony to remove the impression which had been made upon his mind by what he had heard."

These cases, and those following them, should have been expressly overruled, for there can be no difference in the mind of one who is possessed of an opinion which would require evidence to remove, and one who believes the accused has committed a "crime," a belief which he frankly admits he will entertain until the defendant has "proved himself." The premises are identical, and the same legal conclusion should follow.

Furthermore, the juror should have been rejected on general grounds; for experience has taught us that one who will qualify himself when under examination by the state, and as readily disqualify himself when under examination by the defendant, and will do either as the court may lead him, does not disclose that steadiness of mind that a juror who sits in judgment upon the life or liberty of another should possess.