[No. 1615. Decided February 18, 1895.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM WILCOX, *Appellant*.

JUROR — CHALLENGE FOR CAUSE — BIAS.

Where, upon the examination of a juror in a criminal prosecution, it appears that the juror has formed an opinion as to the guilt or innocence of the accused from newspaper accounts and the conver-

sation of a friend who was a witness in the case, which opinion it would take evidence to remove, such juror, although subsequently stating that he thought he could lay aside his formed opinion and try the case upon the evidence, is subject to challenge for cause. (HOYT, C. J., dissents.

*Appeal from Superior Court, King County.*

*Frank B. Ingersoll,* and *Melvin G. Winstock,* for appellant:

The general rule of law in criminal cases seems to be that, if the opinion of the juror is formed from information derived from witnesses, it is sufficient to disqualify him, even though he declares his belief to try the case impartially. *A fortiori,* if the witness be a friend of the juror. *Smith v. Eames,* 36 Am. Dec. 528; *People v. Mather,* 21 Am. Dec. 122; *Rose v. State,* 2 Wash. 310; *Young v. Johnson,* 25 N. E. 363; *State v. Beatty,* 25 Pac. 899; *Thurman v. State,* 43 N. W. 404; *Stinson v. Sachs,* 8 Wash. 391.

To make such a juror admissible, his statement that he could try the case fairly and impartially must have been certain, unequivocal and absolutely free from doubt. *People v. McGonegal,* 32 N. E. 616; *State v. Coella,* 3 Wash. 99.

*John F. Miller,* Prosecuting Attorney, *A. G. McBride,* and *A. W. Hastie,* for The State.

To disqualify a man from serving as a juror, he must have a firm, fixed and abiding opinion as to the guilt or innocence of the defendant, or upon some other material fact in the case. *State v. Dorsey,* 5 South. 26; *People v. Barker,* 27 N. W. 539 (1 Am. St. Rep. 501); *State v. Spaulding,* 24 Kan. 5. As to reading newspapers: *Holt v. People,* 13 Mich. 228; *Ulrich v. People,* 39 Mich. 245; *Clark v. Commonwealth,* 16 Atl. 795; *Reynolds v. United States,* 98 U. S. 145.

The opinion of the court was delivered by

DUNBAR, J.—In this case the defendant was informed against for murder in the first degree. The case proceeded to trial and the defendant was convicted of manslaughter. Motion for a new trial and in arrest of judgment was duly made and overruled by the court, and defendant sentenced to twenty years' imprisonment in the state penitentiary. From such judgment this appeal is prosecuted.

The first error assigned by the appellant was the ruling of the court in permitting a juror, Charles Kellogg, to serve, over the objection of the defendant, who challenged him for cause on the ground of actual bias. The testimony of the juror on his *voir dire* was substantially as follows:

"*Question :* Have you formed or expressed any opinion touching the guilt or innocence of the defendant? *Answer:* I think I have.

"Q. You think you have?  A. Well, I know I have.

"Q. Have you talked with any one who professed to know the facts of this case?  A. Yes, sir.

"Q. How long since?  A. I think it has been about a month ago.

"Q. Did the parties with whom you talked profess to know the facts of the case?  A. I believe not.

"Q. Did you ever make any personal investigation of the matter?  A. No, sir; only through the papers.

"Q. That is all the investigation you have made, is it?  A. Well, I could not exactly say it is all the investigation I made, because there is a party I talked with quite frequently—an acquaintance of mine that I believe was subpœnaed as a witness in the lower court.

"Q. Did that party with whom you talked profess to know the facts; did he give the facts to you?  A. No, sir; only what he knew about it.

"Q. Well, from the newspaper articles that you read did you form in your mind a determined, fixed and absolute opinion in this matter?  A. No, sir.

"Q. Mr. Kellogg, could you lay aside what impressions or opinions you have formed and try this case solely upon the evidence under the instructions of the court?   A. I think I could, without doubt.

" Q. Could you try it with the same degree of impartiality that you could if you had not read these articles in the newspapers; lay aside that for the time being, and try the case upon its merits?   A. I don't know whether I could or not.   The conversation that I have had and the impressions that I have formed is to a certain extent — I don't know what the testimony would amount to — would not like to say exactly what I could do.

" Q. What I am trying to get at is the condition your mind is in now regarding the material facts of this case; whether or not you could, if you were selected here as a juror, try this case, lay aside what impressions you have formed and try this case solely upon the evidence under the instructions of the court? A. I believe I could."

Witness testified that he did not know either the defendant or the person murdered; and his further testimony in chief was a repetition of what we have above cited.   The cross-examination was substantially as follows:

" Q. Mr. Kellogg, you said in response to a question put by Mr. Miller, that a witness did detail to you such facts as he, the witness, knew?   A. He did, yes, sir.

" Q. What was his name?   A. His name was George Griffin.

" Q. He is a friend of yours, is he?   A. Yes, sir.

" Q. You talked with him about the case during the preliminary hearing here?   A. I don't remember exactly whether it was at the preliminary hearing or a little before.   I know that I saw him afterwards, and I know that I talked with him the time he was held here before the preliminary hearing.

" Q. And he told you at that time the facts relating to this case, so far as he knew them?   A. I suppose he did, yes, sir.   I don't know that he knew or not.

" Q. Well, he told you what he was subpœnaed to testify to, didn't he?   A. Yes, sir.

" Q. Then you read about the matter in the newspapers?   A. Yes, sir.

" Q. Now, have you formed the opinion that you gave from the newspapers or from what Mr. Griffin told you?   A. I have formed it partially through what I have heard from him and through the newspapers and in conversation with other people, one way and another.

" Q. Now, Mr. Kellogg, you said you had an opinion now about the merits of this case?   A. Yes, sir.

"Q. And it would take evidence to remove or change that opinion?   A. Yes, sir.

"Q. Then you feel that if you went into the trial of this case, that unless there were evidence to remove your opinion that you now have you would have to act upon the opinion that you have?   A. I surely would.

"Q. Then, if it would take evidence to remove that opinion, you could not be an impartial juror, could you?   A. I think I could be guided solely by evidence. I don't know that the opinion which I already have would have any weight.   I suppose it would take contrary evidence to change my opinion.

"Q. Well, then, if it would take evidence to change your opinion, you would start in the case with your opinion already formed?   A. Yes, so far as I know the circumstances of the case, I have formed an opinion.

"Q. When counsel asked you if you had a fixed and abiding opinion in the case and you said no, you meant by that, did you, that it is not such an opinion but what could be changed by evidence?   A. That's exactly what I meant.

"Q. Mr. Kellogg, suppose you were the defendant here in the place of Mr. Wilcox, and was accused of the crime of murder in the first degree, would you be willing to go to trial with a jury of twelve jurors with their mind in the same condition that yours is now?   A. I don't believe I would.

"Q. You don't think you would?   A. No, sir."

Here the defense challenged the juror for cause, and the court took him in hand and finally elicited from

him the statement that he could try and determine the cause with the same degree of impartiality as he could if he had never heard anything about it, and that he would be able to disregard the opinion that he already entertained.

It seems to us that this case falls squarely within the rule laid down by this court in *State v. Murphy*, 9 Wash. 204 ( 37 Pac. 420 ). There, after an examination of the authorities, and a somewhat extended presentation of the reason for the conclusion reached by the court, it was decided that the court erred in admitting to the jury box a juror who answered substantially as the juror in this case has answered.

Reading reports of the commission of crime in newspapers cannot, of course, in this day of almost universal reading, be regarded as a ground of challenge to a juror; or even casual talk that one may hear on the street or elsewhere concerning the commission of a crime; for people who read or mingle with their fellow men during the excitement that pervades a community when a crime has been committed, are almost sure to read newspaper accounts of the commission of the crime and to hear people talking of the circumstances of its commission. If any juror should swear that, if the reports which he had heard were true, whether the reports came from newspapers or from individuals, he believed the defendant guilty or innocent, or that he had made up his mind as to his guilt or innocence, that would be one proposition; but where he answers in substance that he has read these reports and that he has heard this talk and that he *does* believe them to be true or untrue, as the case may be, that is altogether another proposition; and that is what this witness substantially testified to, either that he believed them to be true or untrue. If, as he said, he had talked

with a friend of his who had been subpœnaed as a witness in the primary examination, and that friend related to him the facts concerning the crime, and from such relation he formed an opinion as to the guilt or innocence of the defendant; and if it is true, as he said, that if he went into the trial of this case, unless there were evidence to remove that opinion, he would have to act upon the opinion which he already entertained, then certainly he was not an impartial juror; and if the opinion was that the defendant was guilty, and the testimony of the state and the defense balanced, his verdict, according to his statement, would have to be that of guilty. In other words, the defendant would be deprived of the right which he has to be proven guilty beyond a reasonable doubt. He would not even have the benefit of the rule in a civil action of a preponderance of the testimony; but he would have the burden thrust upon him of proving himself innocent. And that is the logical result of that condition of mind in a juror which is exhibited by the expression that it would take evidence to remove the opinion which he already entertains."

The court in this case, as usual in such cases, finally elicited the statement from the juror that he thought he could lay this opinion aside and try the case upon the evidence produced at the trial; but we do not think that this question of capability should be submitted to a juror who has already stated that he has an opinion and such an opinion as it would take evidence to remove. He may be honest enough in making the statement that he can lay such opinion aside, or his pride may prevent him from admitting that he cannot; but when once he has shown the condition of mind that this juror evinced by his answers, his judgment, so far as trying the case upon the testimony produced

at the trial is concerned, is not to be relied upon; for
the human mind is so constituted that it is not con-
scious of its own weakness. If it were, its frailties
would be corrected, or, more logically, would not exist.
In fact this juror's statements are contradictory, and
the final declaration that he could so try the case
without reference to his opinion was not only a flat
contradiction of a former assertion, but was simply the
statement of a conclusion and not of a fact; while the
assertion by him that he had formed an opinion which
it would take some evidence to remove was the state-
ment of a fact, and from such facts the court is better
able to deduce conclusions than the juror himself.

If reading reports of the commission of crime in
newspapers produces the impression on minds of
jurors that this juror declared it did on his, and such
jurors are pronounced by the courts to be competent,
then the practical result will be that men will be tried
and convicted by the newspapers instead of by the
testimony which is adduced in court under the rules
of law prescribed for such trials. If a juror has heard
a statement concerning the facts in a case from a
friend in whom he has confidence, and that statement
made such an impression on his mind that it created
an opinion as to the guilt or innocence of the defend-
ant, it is very doubtful if he would be able to entirely
separate that information from the testimony which
he may listen to during the progress of the trial, and
the effect of such testimony is liable to be colored by
what he knows, or thinks he knows, about the case
from the prior information which he has obtained.
The result is that just to the extent that he is in-
fluenced by this outside information are the defendant's
rights determined by the testimony of a witness whom
he is not able to meet face to face or to examine.

Courts always are and should be loath to disturb the verdicts of juries for errors of this kind, but it is the constitutional right of every citizen to be tried by an impartial jury, and when that right is denied he must have redress. There was no occasion in this case for imposing this juror upon the defendant. He was the last juror called; the defendant had exhausted all his peremptory challenges; eleven other jurors had been impaneled who disclaimed any opinion as to the guilt or innocence of this defendant; and, no doubt, hundreds of men could have been readily obtained who would have been competent jurors beyond any question.

It is not necessary at all to go to the other extreme and hold that a man must either possess so little intelligence or energy or learning that he has not heard of the commission of the particular crime, or the detailing of the circumstances through the ordinary avenues for the dissemination of alleged information of this kind. But this witness, we think, showed either that he did not have sufficient intelligence to understand the force of his own language, or else that he actually did have such a fixed opinion in the case as ought to preclude him from acting as a juror.

This defendant was charged with an atrocious crime, committed in a brutal, heartless, fiendish manner, and the community, doubtlessly, was justly 'excited, incensed and outraged; but these features of the case furnish the strongest reason for according him a trial by an impartial and unprejudiced jury, totally uninfluenced by public sentiment; a jury every member of which could without question pass upon his guilt or innocence solely and exclusively from the testimony presented at the trial.

Other errors are alleged by the appellant, but as they

are not liable to occur upon a new trial, we will not notice them. For the error above discussed, the case will be reversed, with instructions to grant a new trial.

ANDERS and GORDON, JJ., concur.

HOYT, C. J. (*dissenting*).—I am unable to find anything in the record which satisfies me that the trial court abused its discretion in denying the challenge for cause interposed by the defendant to the juror Kellogg. In my opinion the examination of the juror disclosed an entirely different state of mind from that disclosed by the examination in the case of *State v. Murphy*, referred to in the foregoing opinion. In that case facts were made to appear which might well induce the belief that the juror was in such a state of mind as would disqualify him. His answers to some of the questions showed such a want of frankness as to warrant the belief that he did not fully realize the importance of the examination. It was therefore competent for this court to find that the juror was in fact disqualified, and that the court committed error in coming to a contrary conclusion.

But in my opinion the facts of that case none too well authorize an interference with the discretion vested by law in the trial court, and the doctrine therein announced should not be extended. The facts disclosed by the examination in the case at bar satisfies me that the juror was a fair-minded man; that he appreciated the object of the examination, and with the utmost frankness laid bare his mind that the court might form an intelligent conclusion as to whether or not it was in such a state as to disqualify him from sitting as a juror.

The distinction sought to be drawn by the cases relied upon by the appellant between an impression and

an opinion is to my mind without force.   I can see no distinction between them except one of degree.   If one has an impression as to a fact he has an opinion in regard thereto, and if it requires evidence to change an opinion it will also require evidence to do away with an impression.   It seems to me that the majority of the court, following other courts who have passed upon like questions, have made a mistake in assuming that because a juror has an impression or an opinion, he will necessarily act upon it unless it is removed by evidence.   In my opinion a fair-minded man will do no such thing.   He may have an opinion founded upon information not obtained during the progress of the trial and yet be able to comply with his oath as a juror and decide the case solely upon the evidence introduced at such trial.

The rule announced, if carried to its logical conclusion, will prevent any person sitting as a juror who has heard anything of the purported facts relating to the issue to be determined upon the trial.   If he has heard anything of the kind his mind must necessarily have received some impression therefrom, and, if it has, such impression will remain until something is brought to his attention which will remove it; and if it is to be assumed that the impression will influence his decision, it will, in every such case, require evidence to put his mind in such a state that he is qualified to sit as a juror.

If a juror has an impression at all he cannot honestly otherwise answer the question as to whether or not it will require evidence to remove it than to say that it will.   But it does not follow that such impression must be removed to enable him to decide the case upon the evidence introduced at the trial.   If he is an honest man he will try to disregard any such impres-

15—11 WASH.

sion or opinion and decide the case upon the evidence so introduced. And if our statute means anything it means that it is the duty of the trial court thereunder to determine whether or not he can do his duty in that regard.

If it is assumed that the impression or opinion must be removed by evidence, then one having an opinion of any kind, or even an impression, is disqualified. Such a holding entirely negatives our statute, which provides that the fact that the juror has an opinion shall not disqualify him if the trial court finds that he can fairly try the case. Under such statute the trial court finds a fact upon evidence introduced before it, and such finding should not be set aside by the appellate court unless it is clearly wrong. Such is the general rule as to the force to be given to findings of fact by the trial court. And where, as in this case, the fact to be determined is as to the state of mind of a person examined before such court, it should be applied to the fullest extent. In such a case the bearing and appearance of the person examined furnish more information than what he says.

In my opinion the judgment and sentence should be affirmed.