[No. 4477.   Decided February 24, 1903.]

THE STATE OF WASHINGTON, *Respondent*, v. J. E. CRONEY, *Appellant*.

CRIMINAL LAW — PROSECUTION BY INFORMATION.

Bal. Code, § 6813, which provides that "the grand jury shall inquire into the cases of parties in custody or under bail, charged with commission of offenses against the laws of this state, and duly returned by a committing magistrate, or upon a complaint sworn to before an officer authorized to administer oaths and presented by the prosecuting attorney, or under the instructions of the court," is inapplicable in cases where one is in custody under an information filed by the prosecuting attorney.

SAME — JURY — INCOMPLETE PANEL — RIGHTS OF ACCUSED.

The statutory provision respecting the number of jurors necessary to be provided for in the venire to fill incomplete panels is one in the interest of the state, and does not give the accused a vested right in the number to be summoned.

SAME — QUALIFICATIONS OF JUROR — PREJUDICE.

In the examination of a juror it is not proper to ask him if he has a prejudice against a man who stands charged with a crime (FULLERTON, C. J., dissents).

SAME — GROUND OF CHALLENGE — BIAS.

Where a juror says that he has a feeling against crime and to some extent an opinion against one charged therewith, but would try the case upon the evidence and under the instructions of the court, regardless of any other consideration, he cannot be challenged on the ground of bias.

SAME.

The fact that a juror testified on his examination that he could not give the defense of insanity caused by the excessive use of intoxicating liquors the same weight as any other defense

would not be ground of challenge, where his later examination showed that, when he understood from the court that insanity from intoxication was a defense under the law, he was willing to recognize such defense and give the defendant the benefit of the evidence thereon.

SAME — IMPRESSION FORMED FROM NEWSPAPER ACCOUNTS.

The impression formed as to defendant's guilt from reading a newspaper account of a crime, although requiring evidence to remove, is not such an opinion as would disqualify a juror from passing upon the guilt or innocence of the defendant, when he further testifies that such impression or opinion would not influence him in arriving at a just verdict based upon the testimony at the trial and the instructions of the court.

SAME — FEELING AGAINST INSANITY AS A DEFENSE.

Although a juror has testified that he could not impartially and fairly try a case where the defense was insanity caused by the excessive use of intoxicating liquors, yet he is not subject to challenge, where, after explanation by the court that insanity, from whatever cause, is a good and valid defense to every charge of crime, he answers that he could give the defendant the benefit of every reasonable doubt upon the question of insanity.

SAME.

Where a juror answered that he could not give insanity caused by the excessive use of liquors the same weight as any other legal defense, but, after the distinction between drunkenness and insanity caused by drunkenness had been explained to him, answered that he would undoubtedly give the defendant the benefit of such defense, he was not subject to challenge on the ground of bias.

Appeal from Superior Court, Stevens County.—Hon. FRANK H. RUDKIN, Judge. Affirmed.

C. A. Mantz and J. A. Kellogg, for appellant.

J. E. M. Bailey, Prosecuting Attorney, and P. F. Quinn, for the State.

The opinion of the court was delivered by

DUNBAR, J.—The appellant was charged, upon information of the prosecuting attorney, with the crime of murder

in the first degree for the killing of one Jerry Lyons, on the 12th day of February, 1902. The killing was admitted, and as a defense the appellant claimed that, at the time of the killing, he was insane from the excessive and long-continued use of intoxicating liquors, and by inheritance from his father, who had been addicted to the excessive use of intoxicating liquors, and who had been insane before the birth of the defendant; also that the killing was done by defendant in self-defense, it appearing to him at the time of the killing that it was necessary to take the life of deceased in order to protect his own. The jury found the defendant guilty of murder in the second degree, and the court thereupon pronounced sentence of seventeen years in the penitentiary.

It is assigned, first, that the court erred in its refusal to grant defendant's motion to quash the information and discharge the defendant, for the reason that at the time a grand jury was in session the defendant was confined in the county jail, and that the grand jury made no investigation concerning the alleged crime with which the defendant was charged, or at all; and that the grand jury did not return a true bill against the defendant, charging him with the crime of murder in the first degree, or with any crime. We think the appellant misinterprets § 6813, Bal. Code, which provides that "the grand jury shall inquire into the cases of parties in custody or under bail, charged with commission of offenses against the laws of this state, and duly returned by a committing magistrate, or upon a complaint sworn to before an officer authorized to administer oaths and presented by the prosecuting attorney, or under the instructions of the court." This case does not fall within the provisions of such section. Our statute provides that a prosecution may be either by information

or indictment, and the provision referred to above does not apply to a case where an information has been filed.

The second assignment—that the court erred in its refusal to grant defendant's motion to quash and set aside the panel of petit jurors—is equally without merit. The defendant had no vested right in the number of jurors provided for in the venire to fill incomplete panels. The provision in relation to the number is an economic provision in the interest of the state, with which the defendant is not concerned. Nor are we inclined to sustain the third assignment—that the court erred in refusing to grant defendant's motion for a continuance on the ground of the absence of material evidence on the part of the defendant. This is a matter which was submitted to the discretion of the court, and an investigation of the record does not convince us that such discretion was abused.

It is stoutly maintained that the court erred in its refusal to sustain defendant's challenges for cause to numerous jurors to whom defendant excepted. The first of these was the juror Nettleton. The first pertinent answers in the examination were as follows:

"Q. Mr. Nettleton, have you any feeling or prejudice against a man who stands charged with a crime? A. Yes, sir. Q. You have? A. Yes, sir. Q. Is that opinion or prejudice such as would preclude you from, or would hinder you in any way from, bringing in a verdict according to the law and evidence? A. No, sir. Q. Is that opinion a fixed opinion against a person charged with an offense? A. To a certain extent. Q. Then you could not, Mr. Nettleton—could not, if you were chosen as a juror—go into the case unbiased in every way? A. I think I could. Q. But still you do have a prejudice against a person who stands charged with an offense? A. Yes, sir. Q. Even before he is proven guilty? A. Yes, sir. Q. And you

would go into the trial of this case, if chosen as a juror, with that prejudice against the defendant, would you? A. I think I would. Q. Then you could go into the trial of this case presuming the defendant innocent of any crime? A. Yes, sir; I could. Q. You would? A. Yes. Q. Then that prejudice which you have spoken of against the defendant would not in any way affect your feeling towards him in the trial of this case, if you were chosen? A. Not to any extent. Q. But it would to some extent? A. Yes. The Court: Will you try this case upon the evidence wholly, and under the instructions of the court, regardless of any other consideration? A. Yes, sir."

Whereupon the challenge was denied. We do not think that the answers elicited from the juror show that he was disqualified to act as a juror in the case. In the first place, it is not proper to ask a juror if he has a feeling or prejudice against a man who stands charged with a crime. No man, if he understands such a question, will answer that he has a prejudice, because a prejudice is something that is not founded on information or reason. It was plainly not the intention of the juror to proclaim himself such a man. He evidently meant to say that he had a feeling against crime, and, when he said that he would try the case upon the evidence wholly, and under the instructions of the court, regardless of any other consideration, if he is to be believed, he would be a fair juror. A further examination of this juror was as follows:

"Q. Mr. Nettleton, have you any feeling or prejudice against a defense, interposed to the charge of murder, of insanity? A. I think not. Q. Well, do you know you have not? A. Yes. Q. If the defense should be insanity caused by the excessive use of intoxicating liquors, could you give that evidence the same weight as any other defense known to the law? A. I could not. Q. You could

not? A. No, sir. Q. And you would not? A. No, sir."

(Another challenge was interposed for cause.)

"The Court: If the court should instruct you that the defense of insanity, whatever might be the cause of that insanity, was a defense to this crime, would you consider that—would you give the defendant the benefit of it? A. I would. Q. The mere fact that his insanity was caused by the excessive use of intoxicating liquors would not prejudice you against him, providing the insanity was shown—would you consider it the same as any other defense interposed upon the trial, and give the defendant the benefit of it, provided it was shown by the testimony. A. I would."

It is evident that the witness did not understand the difference between insanity and intoxication, and that, when he understood from the court that insanity from intoxication was a defense under the law to a charge of crime, he was willing to recognize the defense and abide by the law.

The juror Ogden testified that he had read an account of the killing in a newspaper; that he formed an opinion from such reading; and that it would take evidence to remove that opinion; and, when asked the direct question if it would take evidence to remove such opinion, replied that it would. But to the next question: "Then you could not go into this jury box, sworn as a juror, with your mind perfectly free, neither in favor of one side or the other, if you were chosen as a juror?" the answer was: "Yes, sir; I think I could." Q. "You could go into the jury box with your mind perfectly free from bias?" A. "Yes, sir." Q. "Then the opinion you have would not in any manner influence you in arriving at a just verdict in this case?" A. "I don't think it would." The whole testimony of the juror shows that he did not intend

to state that he had any fixed opinion in regard to what he had read of the matter, but that it was simply an impression from such reading, without any knowledge of whether what he had read was the fact or not. The amount of credit given to newspaper accounts differs very largely with the individuals who read them, and yet it can scarcely be denied that some impression is made on the mind of every reader who gives time enough to an article to read it at all. But such an impression as this is not such an opinion as would disqualify a juror from passing upon the guilt or innocence of a defendant based upon the testimony adduced at the trial, under proper instructions by the court.

The juror Lynch gave the following answers to questions touching his qualifications:

"Q. Now, Mr. Lynch, feeling as you do with reference to the defense of insanity, if you stood charged with this offense here, and your defense should be insanity caused by the use of intoxicating liquors, would you feel satisfied with a man sitting upon your jury entertaining the same ideas which you now entertain? A. No, sir. Q. Do you feel as though you could fairly and impartially try this case, so far as the defendant is concerned, if that should be the defense? A. No, I do not think so. Q. You feel as though you would try and do your duty under the instructions of the court, but your opinions would influence you for all that in the matter? A. I believe they would. Q. Then you do not feel that you could give that defense the same weight as you would give the defense of self-defense under the instructions of the court? A. No, sir."

Then the challenge was interposed, and the following query made by the court:

"Q. Mr. Lynch, insanity is a good and valid defense to every charge of crime, and if, after hearing all the testimony in this case, it appeared to you that the defen-

dant was insane, or you had a reasonable doubt as to his being insane, regardless of the cause of that insanity, would you give him the benefit of that doubt under the instructions of the court? A. Why, certainly. Q. Would you treat it to that extent under the instructions of the court just the same as any other defense? A. Certainly. Q. Have you any doubt as to your ability to do that? A. No, sir; I have not the least bit of doubt. Q. You have no doubt but what you can give the defendant the benefit of every reasonable doubt upon the question of insanity, or any other question in this case? A. Yes, sir. Q. And will you do so? A. Yes, sir."

Before the test of incompetency can be applied to a question propounded to a juror, it must appear that the juror answers with understanding. A simple-minded, though ordinarily intelligent, juror may be led to make many remarks which seem to disqualify him, and would disqualify him if he understood the full scope of the questions. But it is evident from the testimony of the juror in this case that he was answering the questions in regard to the defense of insanity before he had been made aware that insanity under the law was a good defense to every charge of crime. And it appears evident that, when he answered enlightened by such information, the answer to the previous question was explained, and the witness at least thought that he was qualified to do justice to the defendant. While we have said in *State v. Murphy,* 9 Wash. 204 (37 Pac. 420), and *State v. Wilcox,* 11 Wash. 215 (39 Pac. 368), that a juror who has expressed himself as entertaining a certain view on a question cannot be heard to say that he can lay aside that view and render justice to a defendant for the simple reason that he is not able to tell whether or not he can disabuse his mind, yet the questions propounded and answered in those cases

were answered with a full understanding of the subject discussed.

What has been said with reference to the jurors before mentioned will apply to the juror Townsend, with whom the following colloquy occurred:

"Q. Have you any feeling or opinion or prejudice in favor or against a defense if it should be insanity on a charge of this kind? A. I don't think I have. Q. If it should appear that insanity had been caused by the excessive use of intoxicating liquors, could you give that defense the same weight, under the instructions of the court, as any other legal defense? A. Don't think I could. Q. Even if the court should instruct you— A. Do I understand you if it was caused by liquor? Q. Yes, sir. A. I don't think I could."

(Challenge interposed.)

"The Court: You understand there is a distinction between drunkenness and insanity caused by the use of intoxicating liquors? A. Yes, sir. Q. And if it should appear that this defendant was insane from any cause, or you entertained a reasonable doubt of his insanity from any cause, you would give him the benefit of that doubt and find him not guilty? A. I think I should; certainly. Q. That is, insanity as distinguished from drunkenness? A. Yes, sir."

It is evident the first questions propounded the witness were answered without an understanding of the difference between drunkenness and insanity, and he simply meant to express the ordinary thought that drunkenness is no excuse for crime. But when he finally understood— as he should have understood before he was called upon to answer any questions at all on the subject—the distinction between drunkenness and insanity caused by drunkenness, the juror unhesitatingly asserted that he would give the defendant the benefit of such defense; making a seeming contradiction of his prior testimony, when there was no

contradiction in fact.

We think, after reading the entire examination of all of these jurors, that, under the rule announced by this court in *State v. Farris,* 26 Wash. 205 (66 Pac. 412), they were not disqualified.

We do not think there was any reversible error in the instruction of the court as to reasonable doubt, or in the refusal of the court to give instructions asked, as the law on the subject had been correctly given.   Nor was there any error in the alleged  irregularities  concerning the bailiff, or in any other particular.

The judgment is affirmed.

MOUNT and HADLEY, JJ., concur.

FULLERTON, C. J. (dissenting)—I cannot agree with the majority that the jurors Ogden, Thompson, and Lynch were qualified.   The two first named were, I think, disqualified under the rule in *State v. Murphy,* 9 Wash. 204 (37 Pac. 420), and *State v. Wilcox,* 11 Wash. 215 (39 Pac. 368), and that juror Lynch was disqualified because prejudiced against one of the defenses interposed.   True, the latter said, in answer to questions put to him by the judge, that he could give the defendant the benefit of the defense of insanity caused by drunkenness, or the benefit of a reasonable doubt on the question; yet it is well known that one having a prejudice against a particular defense is much harder to convince of its existence than is one whose mind is free to act.   Neither can I agree that it is improper to ask a person called as a juror whether or not he has a prejudice against a man who stands charged with crime.   Such a prejudice does exist, and, when strong enough to affect the juror's decision, is a disqualification. By the Code a proposed juror is made a competent witness as to his own qualifications, and I see no reason why

he may not be examined on any subject that affects his qualifications. But if it were not a question going to the competency of the juror, I still think it permissible. In this state a certain number of challenges are allowed each party, which can be exercised without assigning a reason therefor. If this right is to remain of value, then the parties must have the privilege of examining jurors somewhat more widely than the statutory right to challenge for cause will warrant. As preliminary to this right of peremptory challenge, I think such questions as this are not only permissible, but proper. In my opinion, the judgment should be reversed, and a new trial granted.