
FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 MAR 18 AM 9: 13

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 66005-5-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| RUSSELL EARL LOVEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 18, 2013 |

SPEARMAN, A.C.J. — Russell Loven was convicted of several counts of rape of a child, one count of child molestation, one count of sexual exploitation of a minor, and one count of possessing depictions of minors engaged in sexually explicit conduct. On appeal, he claims the trial court erred in (1) denying his for-cause challenges to two potential jurors; (2) denying his request for a multiple-acts unanimity instruction for the depictions count; and (3) considering his prior convictions for rape of a child as predicate offenses during sentencing. Concluding that the first two issues are controlled by case law adverse to Loven's position and that his prior convictions are not constitutionally invalid on their face, we affirm.

## FACTS

Loven lived in two different apartments owned by Chris Nyhus from 2004 until October 2008. Loven worked as a handyman for Nyhus in exchange for rent. Nyhus's stepson, R.B., met Loven in 2004, when R.B. was 10 years old. Loven engaged in

sexual acts with R.B. starting from when the latter was 10 years old until he was 14.[1] Loven told his roommate, Christina Evans, that his relationship with R.B. "was just touching and oral, nothing else." Verbatim Report of Proceeding (VRP) at 901, 931. Loven told Evans he did not think the relationship was wrong because he considered it to be consensual. Over the course of four years, Loven took photographs and videos of R.B., posting some of these images on the internet.

When R.B. was 14 years old, he introduced Loven to his 15-year-old friend C.J. Loven gave R.B. and C.J. marijuana and alcohol. On one occasion when R.B. and C.J. were at Loven's apartment, Loven told C.J. that R.B. and Loven were going into the bedroom to have oral sex. Loven touched C.J.'s penis with his hand on several occasions and asked C.J. repeatedly to allow Loven to perform fellatio on him. C.J. refused at first but eventually agreed.

Loven had an extensive collection of child pornography, including images of children between the approximate ages of 4 to 14 engaging in sexual acts with adults and other children. Loven told Evans that he kept some of these materials in one of his cars because he did not want to get caught with them inside the apartment.

In October 2008, Evans' friend Julie Leach called the police and took Evans to speak to Detective Keith Savas about Loven. Savas interviewed Loven on October 24, 2008. During this interview, Loven denied having sexual contact with R.B. but admitted to possessing child pornography.

The State charged Loven with one count of rape of a child in the first degree (victim R.B.), one count of rape of a child in the second degree (R.B.), two counts of

---

[1] During this four-year period, Loven was between 39 and 43 years old.

rape of a child in the third degree (R.B. and C.J.), one count of child molestation in the third degree (C.J.), one count of sexual exploitation of a minor (R.B.), and one count of possessing depictions of minors engaged in sexually explicit conduct.

A jury trial on these charges took place in January 2010. Before trial, prospective jurors answered the following questions:

> 13. Are you able to sit on a jury in a case involving an accusation of sexual misconduct by an adult male against two male children?
>
> 14. Are you able to sit on a jury in a case involving an accusation of rape of a child?
>
> 15. Are you able to sit on a jury where you would view graphic images of children engaged in sexual conduct?

Clerk's Papers (CP) at 285, 297. Jurors 25 and 47 answered each of these questions "no." Id. During voir dire, these jurors elaborated on the difficulties they would have in sitting on the case.[2] Loven challenged jurors 25 and 47 for cause. The court denied the challenges. The defense later used two peremptory challenges to excuse jurors 25 and 47 and ultimately used all six allotted peremptory challenges.

---

[2] Juror 25 stated that she would tend to believe a child witness and the child's allegations of sexual abuse. She expressed uncertainty when the court asked her whether she could "listen to evidence regarding this topic and assess witnesses' credibility and be a fair and unbiased juror." Defense counsel brought up her comments that she would start from the position that a child's allegations of sexual abuse were true unless she were shown evidence to the contrary and asked, "Sort of in this kind of case guilty until proven innocent, right?." She responded, "Yeah." When the court attempted to clarify her position, she said she would probably lean toward believing the child but "would find out what's true" and "wouldn't just assume it's right." She responded "yes" when the court asked if she could presume the defendant innocent until proven guilty and hold the State to its burden of proof. VRP at 559-68.

Juror 47 revealed that her husband had taken photographs of their 13- and 14-year-old daughter "as she went into adolescence, and he insists that it was art, but I thought it was very inappropriate[.]" VRP at 388, 392. She believed she could not sit on a case involving similar accusations because it would bring up feelings that she had at that earlier time. She also said she believed children most often tell the truth. When the court asked whether she could be a fair and impartial juror, she answered, "I probably could." VRP at 389. The court again asked, "Do you think you can be a fair and impartial juror for both the defense and the State given what's happened? Can you set aside what happened with your daughter and only listen to the evidence in this case?" Juror 47 said, "I believe I can." VRP at 389.

3

At trial, the State presented testimony from R.B. and C.J., who testified that Loven had oral sex with them during the charging periods. Police witnesses testified that Loven possessed over 4,000 still images and 40 videos of children. Savas testified these consisted of, "[a]mong other things, numerous, thousands of images of children engaged in sex acts with other children, children engaged in sex acts with adults, photographs that depict naked, partially clothed, or fully clothed children in sexually suggestive poses we call child erotica." VRP at 1408. The State admitted 26 CDs and DVDs containing images and videos. The images and videos that were admitted and shown to the jury included images and videos of R.B., including depictions of him performing fellatio on Loven; a video of a 5- or 6-year-old girl having anal sex with an adult male; and a photograph depicting young boys with erect penises.

Loven asked the trial court to instruct the jury that it must be unanimous as to which act supported a guilty verdict on each of the seven counts. Regarding the depictions count, Loven argued that because the evidence for the depictions count and the exploitation count was being presented to the jury in the same trial, the jury could convict him of both counts based on the same image. He expressed concerns that this might violate double jeopardy. The State opposed such an instruction for the depictions count, asserting there was only one "unit of prosecution" which could be based on "one photo, maybe 5,000 photos." VRP at 1493. The court denied a unanimity instruction for the depictions count.[3] In closing argument, the prosecutor did not elect an image to support the depictions count, making a general reference to

---

[3] The court approved a unanimity instruction for the six other counts.

the thousands of images and videos found in Loven's possession and then discussing the photographs of R.B. and the video of the 5- or 6-year-old child.

The jury convicted Loven as charged. At sentencing, the trial court found that Loven had previously been convicted of two counts of rape of a child in the first degree and imposed the mandatory sentence of life in prison without the possibility of parole.[4] Loven appeals, assigning error to (1) the denial of his for-cause challenges to jurors 25 and 47, (2) the denial of his request for a multiple-acts unanimity instruction, and (3) the consideration of his previous convictions for rape of a child as predicate offenses at sentencing.

## DISCUSSION

### For-Cause Challenge to Jurors

The denial of a challenge for cause is reviewed for abuse of discretion. State v. Gonzales, 111 Wn. App. 276, 278, 45 P.3d 205 (2002). A defendant has the right to an impartial jury under both the state and federal constitutions. State v. Roberts, 142 Wn.2d 471, 517, 14 P.3d 717 (2000). A prospective juror should be removed for cause when the juror's views or opinions would "'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" State v. Hughes, 106 Wn.2d 176, 181, 721 P.2d 902 (1986) (quoting Wainwright v. Witt, 469 U.S. 412, 424, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985)). This "actual bias" is defined by statute as "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged

---

[4] The State alleged Loven had previously been convicted of rape of a child in the first degree. A second conviction for rape of a child in the first or second degree thus resulted in a sentence of life without parole. RCW 9.94A.030(37)(b); RCW 9.94A.507.

person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging[.]" RCW 4.44.170(2).

This case is controlled by State v. Fire, 145 Wn.2d 152, 34 P.3d 1218 (2001). Fire was charged with child molestation. Id. at 154. He brought a for-cause challenge against a juror who expressed that he might have difficulty putting aside his strong feelings about the type of accusation against the defendant in determining guilt or innocence. Id. at 155-56. After the trial court denied the for-cause challenge, Fire used a peremptory challenge to excuse the juror and subsequently used all of his peremptory challenges. Id. at 156. There was no evidence that a biased juror sat on the jury, and Fire was convicted as charged. Id. at 156, 159.

On appeal, this court held that the juror had demonstrated actual bias and should have been excluded by the trial court. State v. Fire, 100 Wn. App. 722, 729-30, 998 P.2d 362 (2000). We reversed Fire's convictions, noting that under State v. Parnell, 77 Wn.2d 503, 463 P.2d 134 (1969), a trial court's erroneous denial of a for-cause challenge requires reversal regardless of whether the juror was ultimately removed by a peremptory challenge. Fire, 100 Wn. App. at 727 (citing Parnell, 77 Wn.2d at 508).

The Washington Supreme Court granted review and reversed this court. Abrogating Parnell in relevant part, the court held there was no basis for reversal of the conviction under those circumstances:

> We find that even if that juror should have been dismissed for cause, Fire exercised one of his peremptory challenges to remove the juror, and there is no showing that a biased juror, against whom the peremptory challenge might have been used, sat on his panel. Following the reasoning in United States v. Martinez-Salazar, 528 U.S. 304, 307, 315-16, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) and

> State v. Roberts, 142 Wn.2d 471, 517-18, 14 P.3d 713 (2000), we conclude that Fire did not lose a peremptory challenge, but exercised it. Therefore, he has not demonstrated prejudice and has not been deprived of any constitutional right. Without having to decide whether the juror should have been removed for cause, we reverse the Court of Appeals and remand for actions consistent with this opinion.[5]

Fire, 145 Wn.2d at 154.

Fire is directly on point. As in Fire, even if juror 25 or juror 47 should have been dismissed for cause, Loven has not alleged that a biased juror sat on the panel and has not demonstrated prejudice.[6] Loven contends Fire was wrongly decided and argues we should follow pre-Fire cases, including Parnell.[7] But Parnell was abrogated by Fire, and this court may not overlook binding precedent of the Washington Supreme Court. State v. Hunley, 161 Wn. App. 919, 932, 253 P.3d 448 (2011), aff'd, 175 Wn.2d 901, 287 P.3d 584 (2012).

---

[5] The cited portion of Fire is from the lead opinion, which was signed by four justices and concluded that Washington case law had tacitly abandoned Parnell's rule that the erroneous deprivation of a peremptory challenge in itself required reversal. Fire, 145 Wn.2d at 159-63. Justice Alexander, concurring in the result, expressed the view that the Parnell rule had not yet been abandoned but that it should be in light of Martinez-Salazar. Fire, 145 Wn.2d at 165-68 (Alexander, C.J., concurring). Thus, a majority of the court agreed that without a showing of prejudice, the mere use of a peremptory challenge to cure an erroneously denied for-cause challenge did not violate the defendant's right to an impartial jury.

[6] Also as in Fire, we do not reach the issue of whether the jurors should have been removed for cause.

[7] He also cites McMahon v. Carlisle-Pennell Lumber Co., 135 Wash. 27, 30, 236 P. 797 (1925); State v. Stentz, 30 Wash. 134, 70 P. 241 (1902), abrogated by Fire, 145 Wn.2d at 163; State v. Lattin, 19 Wash. 57, 60-61, 52 P. 314 (1898); State v. Moody, 18 Wash. 165, 170-72, 51 P. 356 (1897); State v. Rutten, 13 Wash. 203, 43 P. 30 (1895); State v. Wilcox, 11 Wash. 215, 223, 39 P. 368 (1895); State v. Murphy, 9 Wash. 204, 37 P. 420 (1894); and State v. Stackhouse, 90 Wn. App. 344, 351-52, 957 P.2d 218 (1998).

Loven also argues Fire should be overruled on state constitutional grounds,

providing briefing of the Gunwall[8] factors and contending article I, section 21 and

article I, section 22 of the Washington Constitution provide greater protection of "the

right to an impartial jury as protected by our state right to appeal" than does the Sixth

Amendment. Specifically, he cites the right to an impartial jury under article I, section

22; the right to appeal under article I, section 22; and the inviolate right to trial by jury

under article I, section 21.[9] He appears to argue that these provisions create a hybrid

independent right that was violated in his case. But Loven cites no authority in

support of this argument. Moreover, it is evident that Loven was tried by a jury in this

case and he is before us now on appeal of the jury's verdicts. Thus, we conclude that

neither article I, section 21 nor the right to appeal under article I, section 22 was

violated in this case.

Turning to Loven's claim that the "impartial jury" guarantee under article I,

section 22 provides greater protection than the Sixth Amendment in this case, we

reject this claim because a majority of the Washington Supreme Court has concluded

---

[8] State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986) sets forth six nonexclusive factors to guide Washington courts in determining whether a state constitutional provision affords greater rights than its federal counterpart: (1) the textual language of the state constitution; (2) significant differences in the texts of the parallel provisions of the federal and state constitutions; (3) state constitutional and common law history; (4) preexisting state law; (5) differences in structure between the federal and state constitutions; and (6) matters of particular state interest or local concern. Id. at 61-62.

[9] Wash. Const., art. I, § 21 states:
The right of trial by jury shall remain inviolate, but the legislature may
provide for a jury of any number less than twelve in courts not of record,
and for a verdict by nine or more jurors in civil cases in any court of record,
and for waiving of the jury in civil cases where the consent of the parties
interested is given thereto.

Wash. Const., art. I, § 22 provides, in relevant part:
In criminal prosecutions the accused shall have the right . . . to have a
speedy public trial by an impartial jury of the county in which the offense is
charged to have been committed and the right to appeal in all cases . . . .

that the Parnell rule (i.e., that a defendant is presumed to be prejudiced when he is compelled to exhaust his peremptory challenges to remove a juror who should have been removed for cause) is not a constitutional rule. While the lead opinion expressed the view that the rule in Parnell, Rutten, and Stentz was based on constitutional rather than common law grounds, Justice Alexander opined that the Parnell rule was not constitutionally based but rather based on the broader purpose of peremptory challenges, to allow a party to exclude a potential juror for which no reason need be given. Fire, 145 Wn.2d at 164-65 (plurality); 168 (Alexander, J., concurring). Justice Sanders, in a dissenting opinion joined by three other justices, concluded, "The basis for the rule that a defendant is presumed to be prejudiced when he is compelled to exhaust his peremptory challenges to remove a juror who should have been removed for cause is found in neither the state nor the federal constitution. Rather it is firmly ensconced in Washington common law." Id. at 177 (Sanders, J., dissenting). Thus, the rule in Parnell has been interpreted by a majority of our supreme court as not rooted in our state constitution, and Gunwall is therefore of no assistance.

## Jury Unanimity

A defendant has a right to a unanimous jury verdict under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. State v. Kitchen, 110 Wn.2d 403, 409, 756 P.2d 105 (1988). To protect this right in cases where the evidence indicates that more than one distinct criminal act has been committed but the defendant is charged with only one count of criminal conduct, either (1) the State may elect the act upon which it will rely

9

for conviction or (2) jurors must be instructed that they must agree that the same underlying criminal act has been proved beyond a reasonable doubt. State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984).

Loven claims the trial court erred in denying a Petrich instruction for the count of possessing depictions of minors engaged in sexually explicit conduct. He first contends as a general matter that possession can occur at different times and places, and can be constructive, actual, or unwitting. He asserts that, in his case, rational jurors could have found that he did not possess all of the images (believing the defense's suggestion at trial that Leach planted some of the images or gave them to police under the pretense that they were Loven's). But he does not specify how the numerous photographs, digital images, and videos found in his case broke down into multiple distinct acts. His argument simply rests on the notion that each image presented to the jury was a separate act and that the jury was required to agree as to the image upon which its conviction was based.

We rejected this notion in State v. Furseth, 156 Wn. App. 516, 233 P.3d 902, rev. denied, 170 Wn.2d 1007 (2010). There, Furseth was charged with one count of possessing depictions of minors engaged in sexually explicit conduct. Id. at 518. At trial, multiple images found stored on his computer were introduced into evidence, some depicting apparently prepubescent children engaged in sexual intercourse and others depicting young men and boys in various stages of undress. Id. at 519. The jury convicted him as charged. Id. On appeal, Furseth argued his conviction was invalid because the jury was not instructed it had to unanimously agree as to which image out of several constituted child pornography found in his possession, and the

State did not elect a particular image. Id. We rejected this argument based on State v. Sutherby, 165 Wn.2d 870, 204 P.3d 916 (2009), where the court held that regardless of the number of images involved or the number of minors depicted, possession of multiple images of child pornography constitutes a single "unit of prosecution."[10] Furseth, 156 Wn. App. at 520-21 (citing Sutherby, 165 Wn.2d at 882). We held in Furseth that "because the State could not have charged Furseth with multiple, separate counts of possession of child pornography, evidence that he possessed multiple images does not constitute evidence of multiple criminal acts," and therefore a unanimity instruction was not required.[11] Furseth, 156 Wn. App. at 522.

Loven argues that Furseth was wrongly decided, citing State v. Adel, 136 Wn.2d 629, 965 P.2d 1072 (1998), and State v. King, 75 Wn. App. 899, 878 P.2d 466 (1994). Furseth is not inconsistent with these cases. In Adel, the defendant was convicted of two counts of misdemeanor marijuana possession for possessing marijuana simultaneously in two different locations, in his car and in his store. Adel, 136 Wn.2d at 631. The issue was whether Adel's possession of marijuana in two

---

[10] The legislature subsequently amended the statute defining possession of depictions of minors engaged in sexually explicit conduct by dividing it into two degrees based on the content of the material involved. Laws of 2010, ch. 227 § 6. The unit of prosecution for the first-degree offense is now "each depiction or image" possessed by a defendant. RCW 9.68A.070(1)(c). The unit of prosecution for the second-degree offense is "each incident of possession of one or more depictions or images." RCW 9.68A.070(2)(c). These amendments occurred after the events in Loven's case.

[11] We do not read Furseth as holding, as a matter of law, that an allegation of possessing child pornography can never involve multiple acts. We noted in Furseth that "[w]e do not address situations in which spatial or temporal differences might give rise to allegations of multiple acts of possession." Furseth, 156 Wn. App. at 522 n.5. Loven's argument that possession can occur at different times and places and can be actual or constructive could relate to the "spatial or and temporal differences" issue we mentioned in Furseth. But he does not explain how spatial or temporal issues created distinct multiple acts of possession in his case.

places constituted one criminal act (or "unit of prosecution"), in which case his two convictions violated double jeopardy. Id. at 632. The court stated:

> The proper question for this case is what act or course of conduct has the Legislature defined as the punishable act for simple possession of a controlled substance? When the Legislature defines the scope of a criminal act (the unit of prosecution), double jeopardy protects a defendant from being convicted twice under the same statute for committing just one unit of the crime.

Id. at 634. The court concluded that the pertinent statute failed to indicate whether the Legislature intended to punish a person multiple times for possession based on drugs being kept in multiple places. Under the rule of lenity, therefore, Adel could be found guilty on only one count of possession where all of the drugs were within his domain and control at the same time. Id. at 635-36. Adel holds that the unit of prosecution analysis defines the criminal act that forms the basis for a conviction for a given crime and is consistent with Sutherby, upon which our decision in Furseth was based.

Next, King is distinguishable from this case and Furseth. King was convicted of one count of cocaine possession based on evidence that he possessed cocaine (1) in a car in which he was a passenger (constructive possession) and (2) in a fanny pack he was wearing (actual possession). King, 75 Wn. App. at 901. King claimed the cocaine in the fanny pack was planted by the police and that the cocaine in the car belonged to the driver. Id. at 901-04. At trial, the court initially offered to submit a written unanimity instruction, but denied King's subsequent request for a unanimity instruction after the prosecutor agreed to make an election as to the specific instance of possession. The prosecutor did not make an election, however, and the trial court did not give a unanimity instruction. Id. at 903.

12

King claimed on appeal that the trial court erred in failing to provide a <u>Petrich</u> instruction because the State agreed to elect but failed to do so. <u>Id.</u> at 900. The State argued on appeal that King's conviction was based on a continuing course of conduct, and thus, no unanimity instruction was required. <u>Id.</u> at 902-03. This court agreed with King:

> If the State claims it will elect one out of multiple incidents to rely on for conviction it may not later equivocate. In such a case, the trial court must remedy the State's error by issuing a unanimity instruction. Here, as a result of the State's comment and the court's inaction, we cannot say that the jury acted with unanimity as to one act of possession.

<u>Id.</u> at 903.

Here, unlike in <u>King</u>, the State never agreed to elect. Furthermore, King allegedly possessed cocaine in two different ways (constructive versus actual) and presented different defenses as to each. <u>Id.</u> at 903-04. These facts distinguish <u>King</u> from <u>Furseth</u>. As noted, in this case Loven never explained how the many images in his case broke down into separate multiple acts. In fact, defense counsel conceded in closing argument that Loven was guilty of possessing depictions of children engaged in sexually explicit conduct, and asserted no defenses that distinguished between any purportedly separate acts of possession as in <u>King</u>.[12]

### Predicate Conviction

In a statement of additional grounds, Loven claims his two 1994 convictions for rape of a child in the first degree, which were used as predicate offenses for a sentence of life under RCW 9.94A.507, were invalid and suffer from constitutional

---

[12] Defense counsel argued that Leach gave police some images that did not belong to Loven, but this was presented to discredit Leach's testimony as it might relate to the counts Loven argued he did not commit.

defects. Primarily he contends his counsel misadvised him as to his eligibility for a Special Sex Offender Sentencing Alternative and provided ineffective assistance, rendering his plea to those offenses facially invalid, involuntary, and unconstitutional.

A prior conviction that has "previously determined to have been unconstitutionally obtained or which is constitutionally invalid on its face may not be considered" in a sentencing proceeding. State v. Ammons, 105 Wn.2d 175, 187-88, 713 P.2d 719 (1986). "Constitutionally invalid on its face means a conviction which without further elaboration evidences infirmities of a constitutional magnitude." Id. at 188. The Ammons court explained that "[t]o require the state to prove the constitutional validity of prior convictions before they could be used would turn the sentencing proceeding into an appellate review of all prior convictions." Id.

Here, Loven's 1994 convictions have not previously been determined to have been unconstitutionally obtained. And, as the trial court found, the judgment and sentence appears valid on its face. 8/27/10 RP 6. His conviction does not, without further elaboration, show infirmities of a constitutional magnitude. Loven does not point specifically to anything in the document to show its facial invalidity, and the defects he alleges cannot be determined from the judgment and sentence. His recourse, if any, is to challenge the constitutionality of his guilty pleas collaterally in a personal restraint petition under RAP 16.3. State v. Lewis, 141 Wn. App. 367, 397 n.21, 166 P.3d 786 (2007).

No. 66005-5-I/15

Affirmed.

_Spearman, A.C.J._

WE CONCUR:

_Appelwick, J._          _Grosse, J._

15